431 A.2d 883

Martha R. SHARKUS and John A. Sharkus and Francis Riloff, Individually and on behalf of all other persons similarly situated, Appellants,

v.

BLUE CROSS OF GREATER PHILADELPHIA and Thomas Jefferson University, Individually and t/a Thomas Jefferson University Hospital, Individually and on behalf of all hospitals similarly situated.

Supreme Court of Pennsylvania.

Argued Jan. 29, 1981.

Decided July 2, 1981.

Fred Lowenschuss, William D. Parry, Philadelphia, for appellants.

James A. Young, Grant Sprecher, Philadelphia, for Thomas Jefferson University.

Jay H. Calvert, Jr., Thea Duell, Philadelphia, for Blue Cross.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

O'BRIEN, Chief Justice.

On July 31, 1973, appellants, individually and on behalf of all other persons similarly situated, filed a class action complaint in the Court of Common Pleas of Philadelphia against Blue Cross of Greater Philadelphia (Blue Cross) and Thomas Jefferson University Hospital (Jefferson) and other similarly situated hospitals. On September 15, 1977, the court sustained defendants' preliminary objections to plaintiffs' amended complaint on the grounds that it was not a proper class action and that plaintiffs had failed to join certain "indispensable parties" as defendants. The court dismissed the complaint without prejudice to the rights of the named plaintiffs to proceed with individual actions. On September 25, 1978, the Superior Court affirmed *per curiam*, 394 A.2d 627. This Court granted plaintiffs' petition for allowance of appeal on February 27, 1979. The factual allegations pertaining to plaintiff Martha Sharkus are as follows: Sharkus was treated in the accident ward of Jefferson Hospital on July 21, 1970, by Dr. J. David Hoffman, a staff physician of the hospital. Dr. Hoffman diagnosed her injury as a fracture of the distal fifth metatarsal of the left foot. He performed a closed reduction of the fracture and applied a short leg cast. Thereafter, for several months Sharkus continued to suffer swelling and discomfort which Hoffman diagnosed as sympathetic causalgia of the foot. On October 19, 1970, Hoffman admitted Sharkus to Jefferson where she received therapy and cortisone injections.

At the time of her hospitalization Sharkus was covered by a Subscription Agreement between the Budd Company and Blue Cross which provided, *inter alia* that:

"h.  Blue Cross shall not be required to provide under this Agreement the following:

.    .    .    .    .

"4.  In-patient admissions or out-patient services primarily for the following diagnostic studies: Routine physical examinations or check-ups, research studies, screening, pre-marital examinations, studies relating to pregnancy, dental admissions, psychological testing, psychiatric examinations, audiometric testing, eye refractions, or examinations for the fitting of eye glasses or hearing aids, or fluoroscopy with-films;

.    .    .    .    .

"6.  Hospitalization principally for observation or diagnostic evaluation, physical therapy, diagnostic x-ray or laboratory tests;

"7.  Custodial care in hospitals, convalescent facilities or nursing homes;"

Upon her discharge on October 31, 1970, Blue Cross was billed for $1,205.70, the total cost of the hospitalization, and initially it paid all but $5.90 of that amount. However, following a retrospective review, Blue Cross notified Sharkus' physician, Dr. Hoffman, that her hospitalization was not medically necessary, and therefore, it was not covered by her Subscription Agreement.

At Hoffman's request, Blue Cross reviewed the Sharkus claim a second time and once again the claim was rejected. On January 26, 1971, Hoffman was so notified and was informed of his appeal rights to the Insurance Review Committee of the Philadelphia County Medical Society which he pursued. The Insurance Review Committee concurred with Blue Cross' determination that Sharkus' hospitalization was not covered by her Subscription Agreement. Consequently, Blue Cross recalled its previous payment to Jefferson on the ground that the hospitalization was not medically necessary.

On February 16, 1973, Jefferson sent Sharkus a bill demanding payment for the hospitalization. Plaintiffs' amended complaint alleged the bill Sharkus received from Jefferson was her first notice of Blue Cross' refusal to make payment. However, at oral argument before the trial court, Blue Cross introduced a letter to Sharkus dated May 7, 1971, stating that her claim was being rejected.

The factual allegations pertaining to plaintiff Frances Riloff are similar. On March 17, 1968, she was admitted to Jefferson with abdominal pain and early congestive heart failure by Dr. Rachel Cherner, a staff physician of the hospital. She was treated for gastro-intestinal complaints, cardiovascular disease, diabetes and other disorders.

At the time of her hospitalization, Riloff had a Co-pay Comprehensive Plan Subscription Agreement with Blue Cross which provided, *inter alia*, that:

"Benefits shall not be provided under this Agreement for:

. . . . .

"f. In-patient hospitalization principally for diagnosis, diagnostic study, or medical observation (even though therapy directed toward the relief of symptoms may be rendered) when the necessary care can properly be provided on an out-patient basis and the condition of the Subscriber or the nature of the procedure does not necessitate that the Subscriber be hospitalized as an in-patient;

. . . . .

"h. Hospitalization for convalescent or rest cures;"

Upon her discharge on March 30, 1968, Riloff paid $5.00 and Blue Cross was billed for the $1,001.45 balance of the hospital bill which it paid on April 15, 1968. On August 21, 1968, Blue Cross notified Jefferson it was rejecting Riloff's claim of coverage on the grounds that the hospitalization was not medically necessary and was primarily for diagnostic purposes. Thereafter, on October 20, 1968, Jefferson sent Riloff a bill demanding payment of $1,001.45 and notifying her for the first time that Blue Cross refused to make payment. Riloff failed to pay the bill and Jefferson com-

menced an action against her for payment of the charges in September 1969. In September 1972, Riloff instituted an action against Blue Cross seeking payment of her hospital bill. Neither of the independent actions involving Riloff has been concluded.

At all times relevant to these events there existed Provider-Blue Cross contracts between Blue Cross and the defendant hospitals whereby Blue Cross agreed to pay directly to the hospitals sums of money on behalf of its insured for hospital care and medical services rendered at such hospitals upon the recommendation of a physician who was either a member of the medical staff or otherwise acceptable to the hospital. Thus, plaintiffs were third-party beneficiaries to the contracts between Blue Cross and the hospitals.

On July 31, 1973, the named plaintiffs commenced this action under Pa.R.C.P. 2230 [1] seeking to represent a class of persons who, while insured by Blue Cross, were admitted on the recommendation of their physicians to hospitals having contracts with Blue Cross to provide hospital services to persons so insured. The members of the proposed class all incurred expenses which Blue Cross refused to pay on grounds that the hospitalizations were not medically necessary. As a result, the defendant class of hospitals directly charged plaintiffs for the hospitalization costs they incurred.

Plaintiffs alleged that, in refusing to provide payment for hospital and medical costs incurred by them, Blue Cross breached its subscription agreements, as well as its fiduciary duty to administer its health care system in such a way as to protect its subscribers from unknowingly submitting to hospitalization which was not medically necessary and, therefore, not covered by Blue Cross. Plaintiffs also alleged that Jefferson and other hospitals in the defendant class breached their duty to assure that plaintiffs' hospitalizations were medically necessary and would, therefore, be covered by

1. Pa.R.C.P. 2230 was replaced by Pa.R.C.P. 1701–1716, which became effective on September 1, 1977. The Order and Opinion of the court below dated September 15, 1977, relied on the new rules governing class actions.

their Blue Cross insurance. In addition, plaintiffs alleged that the defendant hospitals breached certain written and implied contracts and implied warranties and representations in wrongfully charging and demanding payment directly from plaintiffs for hospitalization which they knew or had reason to know was not medically necessary and for which Blue Cross would refuse to pay.

Plaintiffs asserted that Blue Cross engaged in a continuing course of conduct, consented to by the provider hospitals, which resulted in subscribers becoming directly obligated for in-patient hospitalization costs they reasonably believed were covered by their Blue Cross insurance. Plaintiffs maintained they were required by their Blue Cross contracts to rely upon the medical expertise and advice of the admitting physician and hospital personnel as to the necessity and propriety of such hospitalization.[2] They maintained further that, prior to admission, the hospitals determined that each patient was covered by Blue Cross insurance. As a result, the plaintiff-subscribers consented to hospitalization and incurred substantial hospital expenses which Blue Cross initially paid at the time of the patient's discharge. Later, after reviewing the hospital records, Blue Cross determined the hospitalization was not medically necessary, and, on that basis, revoked its previous payment to the hospital. The

2. Appellants note that the relevant Blue Cross-subscriber agreements, as well as Section 8 of the applicable "Provider-Blue Cross Contract" require that hospitalization is to be rendered only on the recommendation of a physician who is a member of the staff of, or acceptable to the hospital. Further, the subscriber agreements provide that "benefits shall continue only during such time as a Subscriber is under the treatment and care of such a physician," and Section 8 of the "Provider-Blue Cross Contract" requires that the hospital shall render covered services "only during such period as the Subscriber is in need of hospital care ... and is under the care of such physician."

Furthermore, appellants note that Dr. Howard W. Baker, Vice President of Provider Affairs, stated in his sworn deposition as the representative of Blue Cross that (1) a patient cannot make the determination whether or not his hospitalization is medically necessary; (2) the patient must depend upon the advice of the admitting physician; (3) the determination of medical necessity is a matter of judgment that differs among physicians; and (4) such a determination often cannot be made until after the fact.

hospitals then demanded payment of the full amount of the bill directly from the patient even where the hospital's own Utilization Review Committee agreed with Blue Cross that the hospitalization had not been medically necessary.

Plaintiffs asserted they were lay persons without medical training or expertise and, as such, had no basis upon which to independently determine whether such hospitalizations were medically necessary or to anticipate that Blue Cross would deny coverage. Moreover, plaintiffs asserted there was a tacit agreement or understanding between Blue Cross and the defendant hospitals which served to protect their mutual business and financial interests to the detriment of Blue Cross subscribers.

Rule 1708(a) of the Pennsylvania Rules of Civil Procedure provides that the court, in exercising its discretion to certify or to decline to certify a class action, shall consider, among other factors:

"(1) whether common questions of law or fact predominate over any question affecting only individual members."

Further, in *Klemow v. Time, Inc.*, 466 Pa. 189, 352 A.2d 12 (1976), this Court ruled that an essential requirement for maintaining a class action is the existence and predominance of common issues shared by all class members which can be justly resolved in a single proceeding.

Defendants objected to the proposed class action on the basis that (1) Blue Cross has several different contracts with its subscribers and participating hospitals with varying terms and coverages and (2) eligibility under a given Blue Cross contract depends entirely upon the facts of each individual case. The court below recognized that a class action may be maintained even when the claims of members of the class are based on different contracts where the relevant contractual provisions raise common questions of law and fact and do not differ materially. *See Buchanan v. Brentwood Federal Savings and Loan Association*, 457 Pa. 135, 320 A.2d 117 (1974); 4 Anderson, Pennsylvania Civil Practice, rule 2230, p. 349. Nevertheless, the court deter-

mined that members of the proposed class lacked the requisite commonality to maintain a class action. Specifically, the court sustained defendants' objections on the ground that the case did not involve common issues which "predominate over any question affecting only individual members," as required by Pa.R.C.P. 1708(a)(1), since, in its view, "there are uniquely separate issues of fact as to each patient and the appropriateness of the decision of the individual physician for hospital utilization."

On appeal Jefferson argues that, even assuming plaintiffs have stated a cause of action upon which relief can be granted against either Blue Cross or the hospital class, determination of which party would be liable rests on individual questions. Jefferson asserts that the members of the proposed plaintiff class fall into three separate categories; (1) cases where the hospitalization was both medically necessary and not primarily for diagnostic purposes, in which case it should be covered by the Blue Cross contract; (2) cases where the hospitalization was for diagnostic purposes, in which case it is not covered by Blue Cross, but the services were appropriate and the patient should pay for them if consent was given; and (3) cases where the hospitalization was not justified, in which case the admitting physician might be liable. It maintains that individual factual determinations as to medical necessity and the extent of the patient's reliance on medical advice are necessary to resolve the question of liability as to each class member. Thus, it contends, class action treatment is not appropriate since there was no common practice applicable to all members of the proposed class.

In addition, Blue Cross and Jefferson maintain the court's refusal to certify the case as a class action is fully supported by the decision in a similar case, *Metropolitan Hospital v. Department of Public Welfare*, 21 Pa.Cmwlth. 116, 343 A.2d 695 (1975). In *Metropolitan*, the plaintiff hospital sought to represent a class of all Pennsylvania hospitals in challenging the Department's denial of Medicare and Medicaid payments to providers of in-patient hospital care on the grounds that

such care was not medically necessary. The *Metropolitan* court sustained defendant's preliminary objections stating that:

"The inquiry of whether federal and state requirements of *medical necessity* could, and most probably would be different for each claim of each class member. [*sic*] This, in itself, is sufficient to sustain Defendant's preliminary objection to the class action posture of this case. (emphasis in original) 21 Pa.Cmwlth. at 128, 343 A.2d at 700.

We do not view *Metropolitan Hospital* as persuasive authority for denying class action status in this case. The controversy in *Metropolitan* was between a class of hospitals, which had determined that the hospital care of certain patients, who were eligible for Public Welfare benefits, was medically necessary, and the Utilization Review Committee of the Department of Public Welfare, which disagreed with the hospitals' decisions and refused to make payment on that basis. In *Metropolitan* a determination of medical necessity was at issue in each case and, thus, individual issues necessarily predominated over common issues. The proposed plaintiff class of insurance subscribers is in a different posture from the provider hospital class in *Metropolitan*, and, despite a similarity in subject matter of the two cases, the issue raised by the instant plaintiffs is not the same as that presented in *Metropolitan*.

The present class action does not seek to prove that plaintiffs' hospitalizations were medically necessary. *Compare Temple University v. Pennsylvania Department of Public Welfare*, 30 Pa.Cmwlth. 595, 374 A.2d 991 (1977) (hospitals seeking reimbursement for in-patient care were allowed to proceed by class action where the need for hospital care was not at issue). Instead, it seeks a legal determination that (1) subscribers may not be held responsible for the costs of hospitalization which Blue Cross retrospectively determined were medically unnecessary and (2) in such cases, the question of financial responsibility is a matter to be resolved by Blue Cross and the provider hospitals.

The basic issue that is common to all members of the proposed class is stated by appellants as follows:

"If Blue Cross was justified in revoking its payment on the grounds that the hospitalization was 'not medically necessary,' then defendant hospital (acting through the Hospital Director or his delegates) must bear the responsibility for permitting a hospital admission that was not medically necessary. On the other hand, if a hospitalization was sufficiently 'medically necessary' to justify the hospital in accepting the admission, then it is *prima facie* unconscionable to permit Blue Cross with hindsight to apply a more stringent definition of 'medical necessity' and leave the patient caught in the middle."

Plaintiffs maintain that defendants' amended "Provider-Blue Cross Contract" implicitly acknowledges the common issue involved in this litigation. Section 2.3 of the amended contract provides that subscribers shall not now be charged for hospital admissions which are ultimately determined, as a result of formal medical review, to be medically unnecessary, and, further, that the subscriber may only be charged if he insists on hospitalization against the advice of his physician. Thus, defendants rectified the problem at issue in this case by amending their contract. Plaintiffs assert that class action relief is appropriate for those subscribers who were unfairly charged for their hospitalizations prior to the inclusion of Section 2.3 in the contract. They maintain a class action would serve a beneficial social purpose and also would avoid a multiplicity of suits. We agree and reverse the order of the court below sustaining defendants' objections to the class action.

The court below also dismissed plaintiffs' claims against Jefferson for failure to join the admitting physicians on the grounds that, as agents of Jefferson, they were indispensable parties. Pa.R.C.P. 1032(2). The court reasoned that it would be necessary to consider the patient-physician relationship, as well as the physician-hospital relationship, in order to adjudicate plaintiffs' claims that Jefferson, through the physicians, breached an implied contract or representation that plaintiffs' hospitalizations were medically necessary and thus covered by Blue Cross insurance or

that it negligently admitted plaintiffs for hospitalization which it knew or should have known would not be covered by Blue Cross.

In *Columbia Gas v. Diamond Fuel Co.*, 464 Pa. 377, 379, 346 A.2d 788 (1975), this Court defined an "indispensable party" as

". . . one whose rights are so directly connected with and affected by litigation that he must be a party of record to protect such rights and his absence renders any order or decree of court null and void for want of jurisdiction."

Plaintiffs maintain that the admitting physicians do not come within this definition since plaintiffs seek recovery only from Blue Cross and the defendant hospitals and not from the individual admitting physicians. Moreover, they assert that the present litigation affects no rights or interests of the physicians. Jefferson acknowledges that the physicians' status as agents of the hospital does not require that they be joined as defendants. *See* 3 Am.Jur.2d, Agency, § 342, p. 699; 53 Am.Jur.2d, Master and Servant, § 454, p. 475. Nevertheless, it maintains that the physicians will be affected by their interest in "the physician's standard of care to his or her patients with regard to recommending hospitalization." Plaintiffs reply that this litigation does not seek to impose any greater standard of care with respect to determining the medical necessity of hospitalization.

As we noted in ruling on plaintiffs' class action claim, the present case does not seek to litigate the issue of medical necessity for hospitalization. In the case of each member of the plaintiff class, a determination has been made that the hospitalization was not medically necessary. Those determinations were not disputed in this action. Instead, plaintiffs seek a determination of the respective rights and obligations of Blue Cross subscribers, Blue Cross and the hospitals *inter se*. We cannot agree that, for this purpose, the admitting physicians are indispensable parties to the action.

Order of the Superior Court reversed and the case remanded to the Court of Common Pleas to proceed as a class action.