438 A.2d 616

**ABC SEWER CLEANING COMPANY, Appellant,**

**v.**

**BELL OF PENNSYLVANIA and The Reuben H. Donnelley Corp.**

Superior Court of Pennsylvania.

Argued March 2, 1981.

Filed Dec. 11, 1981.

220

Robert H. Dickman, Philadelphia, for appellant.

Harriet F. Withstandley, Philadelphia, for Bell, appellee.

Thomas E. Zemaitis, Philadelphia, for Donnelley, appellee.

Before CERCONE, President Judge, and WICKERSHAM and BROSKY, JJ.

WICKERSHAM, Judge:

On April 30, 1979, plaintiff-appellant, A.B.C. Sewer Cleaning Company, on behalf of itself and all others similarly situated, commenced this action in the Philadelphia Court of Common Pleas, seeking an accounting, injunctive relief and damages.[1] The gravamen of the cause of action is that the

1. The Pennsylvania Public Utility Commission does not have jurisdiction over this case involving yellow page advertising.

In the instant case, the Commission found that the standard type listing in the classified directory is primarily for convenience in locating the telephone number of business and professional subscribers more quickly, whereas the bold face listings and larger displays are primarily for advertising purposes. In either case, the element of advertising is present and this is recognized in the contracts introduced in the record. In each instance the printed portion of the contract is designated an 'application for advertising'. As an advertising medium the classified directory is similar to the sale of appliances or equipment by utilities. Such activities are normally not within the jurisdiction of the Commission. *Erie Lighting Co. v. Pa. P.U.C.*, 131 Pa.Super. 190, 198 A. 901. See also Section 912 of the Public Utility Law, 66 P.S. § 1352. Applying this principle to the facts, the Commission concluded that the classified directory is subject to its control only to the limited extent that each subscriber, who so desires, is entitled to a free listing therein. By voluntarily granting such free listings to subscribers the Company has made a 'dedication' to that extent, but other listings in the classified directory, particularly the listings of non-subscribers, are not a part of the Company's public telephone service.

*Felix v. Pennsylvania Public Utility Commission*, 187 Pa.Super. 578, 583, 146 A.2d 347, 350 (1958).

However, yellow pages listings and advertisements are generally considered outside the realm of necessary services and are usually the subject of a private contract between the customer and the telephone company.... These contracts, containing limitations of liability similar to those in the tariffs, are generally enforced against the customer even in some jurisdictions which have allowed recovery to subscribers against the telephone company for errors in white pages listings....

In the present case, one of appellant's complaints was the omission of his individual business listing in the yellow pages. Because appellant was a business subscriber he was entitled to have his name listed in the yellow pages under the classification 'attorneys' as part of his service. By providing this service Pennsylvania courts have concluded that the telephone company has dedicated that portion of the classified directory to the public, even though any additional, paid listing or advertisement is considered a matter of private contract.

defendants, Bell of Pennsylvania and The Reuben H. Donnelley Corp. (hereinafter Bell and Donnelley), are the beneficiaries of a monopoly on the publication and distribution of classified telephone directories popularly known as the "Yellow Pages"; that they have a common law duty as such beneficiaries to serve the public at reasonable rates; and that they have conspired together to violate that duty. The essence of the scheme, plaintiff alleges, is the continual creation of new additions to the Yellow Pages directories distributed in the City of Philadelphia. Each "new" directory reaches a smaller audience, so that a purchaser of Yellow Pages advertising who wishes to reach all potential customers throughout Philadelphia must purchase space in more directories, each reaching a smaller audience, at a growing aggregate cost (see Amended Complaint, paras. 20–27).

In accordance with Pa.R.C.P. No. 1703(b), the case was assigned to the Honorable Jacob Kalish.

The defendants filed preliminary objections in the nature of demurrers which were overruled by Judge Kalish November 29, 1979. The defendants then filed responsive pleadings.

Thereafter, plaintiff filed its Motion for Class Action Certification, defining the proposed class as:

All persons which, continuously from any date prior to March 1, 1978, purchased display advertisements in any edition of the Philadelphia Yellow Pages and which thereafter purchased display advertisements in the same edition and in either the Business Industrial Directory or any Community Directory, as well.

As used in the foregoing class description, the following definitions apply:

(a) *Person* means an individual, partnership, corporation or other entity;

(b) *Display advertisements* means all Yellow Pages advertising other than service regular listings.

Behrend v. Bell Telephone Company, 242 Pa.Super. 47, 71–72 n.16, 363 A.2d 1152, 1164–1165 n.16 (1976), *vacated on other grounds*, 473 Pa. 320, 374 A.2d 536 (1977).

(c) *Directory* means classified telephone directory or Yellow Pages.

A hearing was held on the certification motion on August 18 and 19, 1980. At the hearing, Judge Kalish correctly noted that the question before him was legal, not factual, and counsel for defendants agreed that those matters admitted in the pleadings were stipulated for purposes of the hearing. Reproduced Record at 38a–39a. The record reveals the following:

Plaintiff has, since 1935, provided residential, commercial and industrial plumbing services on a wholesale and retail basis to customers throughout the City of Philadelphia, and its environs. The company has some thirty-two employees and gross revenues in excess of three-quarters of a million dollars. Reproduced Record at 35a–36a.

Bell is a public utility which provides telephone services and, in conjunction therewith, publishes the Yellow Pages directories. Donnelley is Bell's exclusive agent in Philadelphia for solicitation of advertisements in the Yellow Pages. Amended Complaint and Answers, (hereinafter "pleadings"), paras. 14–16.

The Yellow Pages are a unique and distinctive form of advertising. They are distributed free of charge "to every specific place where there is a telephone—at home, business or industry...." Reproduced Record at 37a–38a; pleadings, para. 18. The majority of plaintiff's customers are obtained through Yellow Pages advertising. Reproduced Record at 37a.

The defendants set the rates for Yellow Pages display advertising with no governmental interference or regulation whatsoever. Pleadings, para. 17.

Until 1966, one edition of the Yellow Pages was distributed throughout the City of Philadelphia. In that year, the defendants divided the city into four geographic sections, publishing a separate Yellow Pages for each section. Thereafter, an advertiser such as plaintiff, which sought its customers throughout the city, had to purchase advertising in

not one, but four, separate directories. Reproduced Record at 62a–63a, 104a.

In 1978, a fifth directory was created. This was the Business Industrial Directory, or "BID Book". An advertiser seeking commercial or industrial customers now had to advertise in the BID Book; all others had to advertise in what was now designated the "People Book". Thereafter, an advertiser such as plaintiff which sought its customers in all categories had to purchase advertising in no less than five directories. Reproduced Record at 64a–65a, 105a; pleadings, para. 22.

The defendants proceeded in 1978 to create a new variety of Yellow Pages for Philadelphia. This was the "Community Directory" for a particular neighborhood or section within one of the four geographical divisions of the city. Telephone subscribers within a designated community would thus receive at least two directories: the "People Book" and the "Community Book" and, in the case of a business subscriber, the "BID Book" as well. The Defendants have created four community directories. Reproduced Record at 38a, and have so promoted them as to make them the primary directory within each community. See Reproduced Record at 99a. Now an advertiser such as plaintiff, seeking all categories of customers throughout Philadelphia, must advertise in the nine separate directories.

There are, by plaintiff's count, approximately three hundred (300) advertisers bearing the same burden as the plaintiff. Reproduced Record at 41a–42a, 100a–103a. These advertisers constitute the proposed class. Judge Kalish ruled that the class was composed of about two hundred and fifty (250) parties and was "adequately defined with some precision." Reproduced Record at 196a; lower ct. op. at 5.

The defendants' evidence consisted of an affidavit of Bell's District Staff Manager-Directory-Sales and Service, which was largely devoted to plaintiff's Yellow Pages advertising history; included were 75 pages of copies of the

duplicative display advertisements purchased by plaintiff from the defendants. Reproduced Record at 104a–191a.[2]

On August 28, 1980, Judge Kalish entered his order denying plaintiff's Motion for Class Action Certification. Hence, this appeal.[3]

As we said in *Bell v. Beneficial Consumer Discount Company*, 241 Pa.Super. 192, 360 A.2d 681 (1976):

> Broad discretion is vested in the trial court to determine 'definition of the class as based on commonality of issues and the propriety of maintaining the action on behalf of the class.'

*Id.*, 241 Pa.Super. at 205, 360 A.2d at 688 (quoting *Klemow v. Time, Inc.*, 466 Pa. 189, 197, 352 A.2d 12, 16 (1976), *cert. denied*, 429 U.S. 828, 97 S.Ct. 86, 50 L.Ed.2d 91 (1976)).[4]

**2.** Brief for Appellant at 3–7.

**3.** In *Bell v. Beneficial Consumer Discount Company*, 465 Pa. 225, 229, 348 A.2d 734, 736 (1975), the Supreme Court of Pennsylvania held that orders denying class action status are appealable as final orders. Appellant frames the statement of questions presented in this appeal as follows:

Where monopolists unlawfully impose unreasonable rates upon a class of persons, which class includes the proposed representative party in a class action lawsuit, for reasons and in a manner the same as to each member of the class,

A. Is not the lawfulness of the Defendant's conduct a 'common question of law'?

B. Is not the reasonableness of the rates a 'common question of fact'?

C. Is not the claim of the representative party 'typical'?

II

May a court properly deny a motion for class action certification because it is 'reluctant to involve' itself in the difficult merits of a case?

III

Are businessmen entitled to less protection from our courts than any other segment of our society?

Brief for Appellant at 2.

**4.** Both the cases of *Klemow v. Time, Inc.*, 466 Pa. 189, 352 A.2d 12 (1976), *cert. denied* 429 U.S. 828, 97 S.Ct. 86, 50 L.Ed.2d 91, (1976) and *Bell v. Beneficial Consumer Discount Company*, 241 Pa.Super. 192, 360 A.2d 681 (1976), were decided under the old rule governing class actions. Pa.R.C.P. No. 2230. There is nothing in the new class action rules Pa.R.C.P. Nos. 1701–16, to suggest any modification of this discretion. In fact, Rules 1708 and 1709 plainly imply a continu-

In *Price v. Lucky Stores, Inc.*, 501 F.2d 1177, 1179 (9th Cir. 1974):

A class action determination under Fed.R.Civ.P. 23 is one of a trial court's considered discretion. As was stated in *City of New York v. International Pipe & Ceramics Corp.*, 410 F.2d 295, 298 (2d Cir.1969), 'the judgment of the trial court should be given the greatest respect and the broadest discretion, particularly if . . . he has canvassed the factual aspects of the litigation.' This is so because the district court is in the best position to consider the most fair and efficient procedure for conducting any given litigation. Such a determination by the court will not be disturbed on appeal unless the party challenging it can show an abuse of discretion. *Wilcox v. Commerce Bank of Kansas City*, 474 F.2d 336 (10th Cir. 1973); *Castro v. Beecher*, 459 F.2d 725 (1st Cir.1972); *Hackett v. General Host Corp.*, 455 F.2d 618 (3d Cir.1972); *City of New York v. International Pipe & Ceramics Corp., supra.*

The prerequisites to class certification are set forth in Pa.R.C.P. No. 1702,[5] as follows:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

(4) the representative parties will fairly and adequately assert and protect the interests of the class under the criteria set forth in Rule 1709; and

(5) a class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708.

ation of substantial discretion by stating certain criteria to be considered but without stating the weight to be accorded each criterion or rendering the criteria exclusive.

**5.** The Pennsylvania Rules of Civil Procedure governing class actions include Pa.R.C.P. Nos. 1701–1716.

Recently in *Sharkus v. Blue Cross of Greater Philadelphia*, 494 Pa. 336, 431 A.2d 883 (1981) (Opinion by Mr. Chief Justice O'Brien), our supreme court held:

> Rule 1708(a) of the Pennsylvania Rules of Civil Procedure provides that the court, in exercising its discretion to certify or to decline to certify a class action, shall consider, among other factors:
>
>> '(1) whether common questions of law or fact predominate over any question affecting only individual members.'
>
> Further, in *Klemow v. Time, Inc.*, 466 Pa. 189, 352 A.2d 12 (1976), this Court ruled that an essential requirement for maintaining a class action is the existence and predominance of common issues shared by all class members which can be justly resolved in a single proceeding.

*Id.*, 494 Pa. at 343, 431 A.2d at 886.

The gravamen of plaintiff's cause of action is that a *de facto* monopoly on any service needed by the general public causes that service to become "affected with public interest" and subject to regulation; in the absence of regulation, there is an implied affirmative obligation upon the monopoly to be reasonable in dealing with the public. *Hertz Drivurself Stations v. Siggins*, 359 Pa. 25, 34, 38, 58 A.2d 464, 470, 472 (1948). Further, the defendants have violated this affirmative obligation by arbitrarily multiplying the number of editions of the Yellow Pages solely and purposefully in order to multiply their revenues. In addition, the multiplication has not increased service; plaintiff and the members of the class are compelled to pay ever-increasing costs for an ever-increasing number of directories, which reach the same audience as was reached before the proliferation was begun. In essence, plaintiff argues, the defendants treat Philadelphia Yellow Pages advertising as a pie. For an advertiser to buy the whole pie, he must buy a continually increasing number of slices, of continually decreasing size, at continually increasing cost.

The proper focus of the lower court's inquiry should have been on the single objective question of whether the defend-

ants abused their monopoly position by imposing an unreasonable rate upon the members of the class. If plaintiff is able to prove this violation by the defendants of their common law duty not to abuse their position, the only remaining inquiry will be as to the extent of that abuse by the defendants. An inquiry as to *why* a member of the plaintiff class advertised in the Yellow Pages, and thus became a victim of the defendants, is clearly unnecessary and irrelevant. Any person who has chosen—for any reason—to advertise in the Yellow Pages has a right to advertise at no more than a reasonable rate. The question of what rate is reasonable for the defendants to charge will be answered objectively, one time, for all members of the class.

The only remaining question, if unreasonableness be proved, will be the objective amounts of damage to which individual class members are entitled. Presumably, the same proportion will apply to each class member. Even if there are differences in the amounts of damages, however, a class action is clearly not barred, as was recognized by the lower court. Reproduced Record at 77a. *Ross v. Shawmut Development Corp.*, 460 Pa. 328, 333, 333 A.2d 751, 753 (1975).

Viewed in light of the issues in the case, as delineated by the pleadings, it is clear that there is one question of fact—the reasonableness *vel non* of the defendants' exactions; and one question of law—whether the defendants violated their common law duty not to impose unreasonable rates. Viewed in this light, the representative plaintiff is indeed representative of the class and the second and third prerequisites of Pa.R.C.P. No. 1702 are satisfied.[6]

---

**6.** Appellees do not challenge the lower court's determination that the first prerequisite of Pa.R.C.P. No. 1702 requiring numerosity was satisfied.

The evidence indicates that about two hundred and fifty (250) parties are involved in the proposed class. This is not based on mere speculation but on the testimony of a corporate officer of the representative party and the exhibit (Ex. P.2) prepared by him and introduced into evidence. The Court finds that the class is adequately defined with some precision. The exact number and identities can be readily obtained. The prerequisite of numerosity is

The court below did not analyze the fourth prerequisite of Rule 1702, that the representative party be an "adequate" representative, under the criteria of Rule 1709; nor did the court address the fifth prerequisite, that the class action be a "fair and efficient" vehicle for the case. Presumably, this was because plaintiff's evidence at the certification hearing as to its capacity to represent the class was largely unchallenged. Indeed, the only evidence or argument proffered by the defendants at the certification hearing went only to the "common question" issues to which the lower court's opinion is addressed.

Plaintiff below alleges that to maintain a class action would serve a beneficial social purpose and also would avoid a multiplicity of suits. We agree. The case, however, is remanded to the court of common pleas for a determination as to prerequisites (4) and (5) of Pa.R.C.P. No. 1702 under the criteria of Pa.R.C.P. Nos. 1709 and 1708, respectively. *See Ablin, Inc. v. Bell Telephone Company of Pennsylvania*, 291 Pa.Super. 40, 435 A.2d 208 (1981).

Reversed and remanded for proceedings consistent with this opinion.

satisfied. *Penn Galvanizing Company v. City of Philadelphia*, 388 Pa. 370, 130 A.2d 511 (195[7]).
Reproduced Record at 196a; lower ct. op. at 5.
A finding that the numerosity requirement is satisfied must be based upon the following:
an examination of 'whether the number of potential individual plaintiffs would pose a grave imposition on the resources of the court and an unnecessary drain on the energies and resources of the litigants should such potential plaintiffs sue individually.' *Temple University of the Commonwealth System of Higher Education v. Penna. Dept. of Public Welfare*, 30 Pa. Cmmw. 595, 603, 374 A.2d 991, 996 (1977).
*Ablin, Inc. v. Bell Telephone Company of Pennsylvania*, 291 Pa.Super. 40, 50 n.5, 435 A.2d 208, 214 n.5 (1981).
We conclude that 250 potential litigants pose such an imposition and we, accordingly, adopt the lower court's finding that the first prerequisite of Rule 1702 is satisfied.