## Thibodeau v. Comcast Corporation

*Gerald J. Williams* and *Mark R. Cuker,* for plaintiffs.
*Seamus C. Duffy, Ronald H. Reynies, Michael P. Daly, Robert C. Heim, Alyson M. Oswald, Peter M. Ryan, Catherine J. Rosato* and *Justin N. Pentz,* for defendants.

BERNSTEIN, *J.,* June 21, 2010—On March 19, 2004, Comcast cable customer Philip Thibodeau filed a class action complaint against defendants Comcast Corporation, Comcast Cable Communications Inc., Comcast Holdings Corporation, Comcast Cable Communications Holdings Inc., Comcast Cable Holdings LLC, Comcast MO Group Inc., Comcast MO of Delaware Inc., and Comcast of Massachusetts II Inc., (collectively defendants). On September 11, 2007, Philip Steinberg filed a petition to intervene as a representative plaintiff. On October 9, 2007, the court granted Steinberg's petition to intervene.

On November 15, 2007, Thibodeau and Steinberg (collectively representative plaintiffs) filed an amended complaint that alleged the following six counts: (I) Unfair Trade Practices and Consumer Protection Law Violations; (II) breach of contract; (III) unconscionability; (IV) unjust enrichment; (V) accounting; and (VI) constructive trust. Plaintiffs' claims that survived preliminary objections and motions for summary judgment are counts (II) breach of contract; (IV) unjust enrichment; and (V)

accounting. Plaintiffs filed a motion for class certification on August 29, 2008. A certification hearing was held on September 29, 2009. On April 12, 2010, the court denied plaintiffs' motion for class certification and found plaintiffs failed to meet the typicality, commonality, or numerosity requirements of Rule 1702 of the Pennsylvania Rules of Civil Procedure. On May 12, 2010, plaintiffs filed an appeal.

Representative plaintiffs and class members are current or former subscribers of Comcast or its predecessors from March 20, 1998 to the present (class period). During the class period, representative plaintiffs and class members were subscribers of defendants' cable services under standardized contracts.

The requested class definition was "all current and former home cable television subscribers to defendant Comcast Corporation or any other defendant or their predecessors in the States of Pennsylvania, Massachusetts, Colorado, Connecticut, Minnesota, New Jersey, Ohio, Oregon, Vermont, and Wisconsin who had a cable converter box and/or remote control installed from March 20, 1998, to the present, and who during this period paid rental fees for this equipment during months when they received standard basic or any other tier of service, all of whose channels are unscrambled, except that Pennsylvania subscribers must have made such payments on or after March 20, 2000. Colorado subscribers must have made such payments on or after March 20, 2001."[1] The

---

1. Class certification hearing September 29, 2009, N.T. p. 5, lines 17-25, 1-10.

differences in date are due to the differences in the applicable statute of limitations.

The amended complaint alleged defendants improperly collected and retained fees from class members for the rental of converter boxes and remote controls which were unnecessary because the class members owned cable-ready televisions or VCRs capable of receiving basic programming without such equipment.

Plaintiffs claimed defendants failed to offer class members cable service without unnecessary equipment. Plaintiffs further claimed defendants failed to adequately notify class members of alternatives to converter boxes such as using universal remote controls available for cable-ready televisions or VCRs. Plaintiffs claimed defendants also failed to adequately notify class members when they no longer needed to rent converter boxes or remote controls. Plaintiffs alternatively claimed defendants charged class members more than the fair rental value of the equipment. Finally, plaintiffs claimed federal law prohibited defendants from purporting to bind subscribers to any contract which required payment for equipment subscribers did not affirmatively request.[2]

The purpose of class action lawsuits is "to provide a means by which the claims of many individuals could be resolved at one time, thereby eliminating the possibility of repetitious litigation and providing small claimants with a method to seek compensation for claims that

---

2. Amended complaint; see also, plaintiffs' opposition to defendants' motion for partial summary judgment at ¶3.

would otherwise be too small to litigate." *DiLucido v. Terminix International Inc.,* 450 Pa. Super. 393, 397, 676 A.2d 1237, 1239 (1996). For a suit to proceed as a class action, Rule 1702 of the Pennsylvania Rules of Civil Procedure requires that five criteria be met:

"(1) the class is so numerous that joinder of all members is impracticable;

"(2) there are questions of law or fact common to the class;

"(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

"(4) the representative parties will fairly and adequately assert and protect the interests of the class under the criteria set forth in Rule 1709;

"(5) a class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708."

Rule 1708 of the Pennsylvania Rules of Civil Procedure requires:

"In determining whether a class action is a fair and efficient method of adjudicating the controversy, the court shall consider among other matters the criteria set forth [below]

"(a) Where monetary recovery alone is sought, the court shall consider

"(1) whether common questions of law or fact predominate over any question affecting only individual members;

438

"(2) the size of the class and the difficulties likely to be encountered in the management of the action as a class action;

"(3) whether the prosecution of separate actions by or against individual members of the class would create a risk of

"(i) inconsistent or varying adjudications with respect to individual members of the class which would confront the party opposing the class with incompatible standards of conduct;

"(ii) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;

"(4) the extent and nature of any litigation already commenced by or against members of the class involving any of the same issues;

"(5) whether the particular forum is appropriate for the litigation of the claims of the entire class;

"(6) whether in view of the complexities of the issues or the expenses of litigation the separate claims of individual class members are insufficient in amount to support separate actions;

"(7) whether it is likely that the amount which may be recovered by individual class members will be so small in relation to the expense and effort of administering the action as not to justify a class action.

"(b) Where equitable or declaratory relief alone is sought, the court shall consider

"(1) the criteria set forth in subsections (1) through (5) of subdivision (a), and

"(2) whether the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making final equitable or declaratory relief appropriate with respect to the class.

"(c) Where both monetary and other relief is sought, the court shall consider all the criteria in both subdivisions (a) and (b)."

The burden of showing each of the elements in Rule 1702 is initially on the moving party. This burden "is not heavy and is thus consistent with the policy that decisions in favor of maintaining a class action should be liberally made." *Cambanis v. Nationwide Insurance Company,* 348 Pa. Super. 41, 45, 501 A.2d 635, 637 (1985). The moving party needs only present evidence sufficient to make out a prima facie case "from which the court can conclude that the five class certification requirements are met." *Debbs v. Chrysler Corp.,* 810 A.2d 137,153-54 (2002) (quoting *Janicik v. Prudential Insurance Company of America,* 305 Pa. Super. 120, 130, 451 A.2d 451, 454 (1982).

In other contexts, the prima facie burden has been construed to mean "some evidence," "a colorable claim," "substantial evidence," or evidence that creates a rebuttable presumption that requires the opponent to rebut demonstrated elements. In the criminal law context, "the prima facie standard requires evidence of the existence of each and every element." *Commonwealth v. Martin,* 727 A.2d 1136, 1142 (Pa. Super. 1999), *alloc. denied,* 560 Pa. 722, 745 A.2d 1220 (1999). However, "The

weight and credibility of the evidence are not factors at this stage." *Commonwealth v. Marti,* 779 A.2d 1177, 1180 (Pa. Super. 2001).

In the family law context, the term " 'prima facie right to custody' means only that the party has a colorable claim to custody of the child." *McDonel v. Sohn,* 762 A.2d 1101, 1107 (Pa. Super. 2000). (citation omitted) Similarly, in the context of employment law, the Commonwealth Court has opined that a prima facie case can be established by "substantial evidence" requiring the opposing party to affirmatively rebut that evidence. See *e.g., Williamsburg Community School District v. Pennsylvania Human Relations Commission,* 99 Pa. Commw. 206, 512 A.2d 1339 (1986).

Courts have consistently interpreted the phrase "substantial evidence" to mean "more than a mere scintilla," but evidence "which a reasonable mind might accept as adequate to support a conclusion." *SSEN Inc. v. Borough Council of Borough of Eddystone,* 810 A.2d 200, 207 (Pa. Commw. 2002). In *Grakelow v. Nash,* 98 Pa. Super. 316 (Pa. Super. 1929), a tax case, the Superior Court said: "To ordain that a certain act or acts shall be prima facie evidence of a fact means merely that from proof of the act or acts, a rebuttable presumption of the fact shall be made; . . . it attributes a specified value to certain evidence but does not make it conclusive proof of the fact in question."

Class certification is a mixed question of fact and law. *Debbs v. Chrysler Corp.,* 810 A.2d, at 154. The court must consider all the relevant testimony, depositions and other evidence pursuant to Rule 1707(c). In determining

whether the prerequisites of Rule 1702 have been met, the court is only to decide who shall be the parties to the action and nothing more. The merits of the action and the plaintiffs' right to recover are excluded from consideration. 1977 explanatory comment to Pa.R.C.P. 1707. Where evidence conflicts, doubt should be resolved in favor of class certification. In making a certification decision, "courts in class certification proceedings regularly and properly employ reasonable inferences, presumptions, and judicial notice." *Janicik,* 305 Pa. Super. at 128, 451 A.2d at 454-55. Accordingly, this court must refrain from ruling on plaintiff's ultimate right to achieve any recovery, the credibility of the witnesses and the substantive merits of defenses raised.

"The burden of proof to establish the five prerequisites to class certification lies with the class proponent; however, since the hearing on class certification is akin to a preliminary hearing, it is not a heavy burden." *Professional Flooring Co. v. Busher Corp.,* 61 D.&C.4th 147, 153, (Montg. Cty. 2003), citing *Debb's v. Chrysler Corp.,* 810 A.2d 137, 153-54 (Pa. Super. 2002); *Janicik v. Prudential Insurance Company of America,* 305 Pa. Super. 120, 128, 451 A.2d 451, 455 (1982). See also, *Baldassari v. Suburban Cable TV Co. Inc.,* 808 A.2d 184, 189 (Pa. Super. 2002); *Cambanis v. Nationwide Insurance Company,* 348 Pa. Super. 41, 501 A.2d 635 (1985). The prima facie burden of proof standard at the class certification stage is met by a qualitative "substantial evidence" test. The burden of persuasion and the risk of non-persuasion however, rest with the plaintiff.

Our Superior Court has instructed that it is a strong and oft-repeated policy of this Commonwealth that,

decisions applying the rules for class certification should be made liberally and in favor of maintaining a class action. *Weismer by Weismer v. Beech-Nut Nutrition Corp.,* 419 Pa. Super. 403, 409, 615 A.2d 428, 431 (1992). See also, *Janicik,* 305 Pa. Super. at 128, 451 A.2d at 454, citing and quoting *Esplin v. Hirschi,* 402 F.2d 94, 101 (10th Cir. 1968) ("in a doubtful case . . . any error should be committed in favor of allowing the class action").

Likewise, the Commonwealth Court has held that "in doubtful cases any error should be committed in favor of allowing class certification." *Foust v. SEPTA,* 756 A.2d 112, 118 (Pa. Commw. 2000). (citation omitted) This philosophy is further supported by the consideration that "[t]he court may alter, modify, or revoke the certification if later developments in the litigation reveal that some prerequisite to certification is not satisfied," *Janicik,* 305 Pa. Super. at 129, 451 A2d at 454.

Within this context, the court examined the requisite factors for class certification. Defendants alleged plaintiffs failed to fulfill the requirements of typicality, commonality, and numerosity.[3]

## I. TYPICALITY

The plaintiffs must meet the requirement of typicality. Typicality requires the plaintiff to show that the class action parties' claims and defenses are typical of the entire class. The purpose behind this requirement is to determine whether the class representatives' overall posi-

---

3. Class certification hearing September 29, 2009, N.T. p. 10, lines 3-6.

tion on the common issues is sufficiently aligned with that of the absent class members, to ensure that pursuit of their interests will advance those of the proposed class members. *DiLucido v. Terminix International Inc.,* 450 Pa. Super. 393, 404, 676 A.2d 1237, 1242 (1996).

Plaintiffs claimed defendants either breached the contractual duty of good faith and fair dealing or were unjustly enriched by billing customers for unnecessary equipment without obtaining their affirmative request.[4]

Federal law prohibits cable service providers from charging customers for services or equipment the customer did not request. This prohibited billing practice is commonly referred to as "negative option billing." The United States Code specifically provides, "A cable operator shall not charge a subscriber for any service or equipment that the subscriber has not affirmatively requested by name . . . a subscriber's failure to refuse a cable operator's proposal to provide such service or equipment shall not be deemed to be an affirmative request for such service or equipment."[5] A subscriber's

---

4. Class certification hearing September 29, 2009, N.T. p. 4, lines 5-11.

5. 47 U.S.C. §543(f). See also, *In re Monmouth Cablevision, Monmouth Cty., NJ,* no. LOI-94-1 (F.C.C. Aug. 22, 1995) at ¶11. In construing and applying this provision, the Federal Communications Commission (FCC) has found that it "protects the interest of subscribers in not being billed for services or equipment they have not requested." Moreover, since the "restrictions of this provision protect subscribers from having to take on the burden of identifying and negatively responding to charges for services that appear on a bill that are not desired and for which no request has been made," the FCC has concluded that it "protects subscribers both from inadvertent payment of such charges and from becoming contractually bound for them."

affirmative request for service or equipment may be made orally or in writing.[6]

Representative plaintiff Thibodeau had a "dual plant system" that did not allow cable to be hooked up directly to his television. Dual plant systems require an intermediary device such as an A/B switch or a converter box. If the user wishes to use a remote control with a dual plant system, a converter box must be used.[7] Because Thibodeau needed a converter box to receive cable and use a remote control, the converter box was necessary equipment.

Representative plaintiff Steinberg had cable hooked up directly to his three televisions for nine years.[8] In 1998, Steinberg had a Comcast installer in his home and Steinberg asked the installer why he did not receive all channels on one of his televisions. Steinberg claimed the Comcast installer mistakenly told Steinberg he needed a converter box. Steinberg then called Comcast and affirmatively requested a technician come to his home and install a converter box. Once the converter box was installed, Steinberg received all channels.[9]

Representative plaintiffs' positions are not sufficiently aligned with that of the absent class members. Representative plaintiff Thibodeau's claims are not typical of the class because Thibodeau, unlike allegations as to the rest of the class, needed a converter box. Representative

---

6. 47 C.F.R. §76.981(a).

7. Class certification hearing September 29, 2009, N.T. p. 75-77.

8. Class certification hearing September 29, 2009, N.T. p. 78-80.

9. Deposition of Philip Steinberg, June 9, 2008, p. 40-41.

plaintiff Steinberg's claims are not typical of the class because Steinberg, unlike allegations as to the rest of the class, affirmatively requested a converter box. The plaintiffs have failed to meet the requirement of typicality.

## II. COMMONALITY

The second prerequisite for class certification is that "there are questions of law or fact common to the class." Pa.R.C.P. 1702(2). Common questions exist "if the class members' legal grievances arise out of the 'same practice or course of conduct' on the part of the class opponent." *Janicik, supra* at 133, 451 A.2d at 457. Thus, it is necessary to establish that "the facts surrounding each plaintiff's claim must be substantially the same so that proof as to one claimant would be proof as to all." *Weismer by Weismer v. Beech-nut Nutrition Corp.,* 419 Pa. Super. 403, 615 A.2d 428 (1992)). However, where the challenged conduct affects the potential class members in divergent ways, commonality may not exist. *Janicik, supra* at 133 n.5, 451 A.2d at 457 n.5.

"While the existence of individual questions is not necessarily fatal, it is essential that there be a predominance of common issues shared by all class members which can be justly resolved in a single proceeding." *D'Amelio v. Blue Cross of Lehigh Valley,* 347 Pa. Super. 441, 452, 487 A.2d 995, 997 (1985). (citations omitted) In examining the commonality of the class' claims, a court should focus on the cause of injury and not the amount of alleged damages. "Once a common source of liability has been clearly identified, varying amounts of damages among the plaintiffs will not preclude class

certification." See *Weismer by Weismer v. Beech-Nut Nutrition Corporation,* 419 Pa. Super. 403, 409, 615 A.2d 428, 431 (1992). Where there exists intervening and possibly superseding causes of damage however, liability cannot be determined on a class-wide basis. *Cook v. Highland Water and Sewer Authority,* 108 Pa. Commw. 222, 233-34, 530 A.2d 499, 504 (1987).

Related to this requirement for certification is whether trial on a class basis is a fair and efficient method of adjudication under the criteria set forth in Rule 1708. In addition to the existence of common questions of law and fact, plaintiffs must also establish that the common issues predominate. Accordingly the analysis of predominance under Rule 1708(a)(1) is closely related to that of commonality under Rule 1702(2). *Janick, supra* at 141, 451 A.2d at 461.

Plaintiffs proposed to certify a class of all Comcast basic service subscribers who had a cable box and/or remote control installed during the class period and who paid rental fees for this equipment. As demonstrated by the representative plaintiffs, plaintiff class' claims cannot be resolved without highly individualized inquires. Determining which customers affirmatively requested a converter box and/or a remote control must necessarily involve a customer-by-customer inquiry. Determining whether the equipment was unnecessary must necessarily involve a customer-by-customer inquiry. These individual issues predominate over common issues. The facts surrounding each of the class members' claims are not substantially the same. Plaintiffs have failed to meet the requirement of commonality.

## III. NUMEROSITY

The claimants must also meet the requirement of numerosity by demonstrating that the class is "so numerous that joinder of all members is impracticable." Pa.R.C.P. 1702(1). A class is sufficiently numerous when "the number of potential individual plaintiffs would pose a grave imposition on the resources of the court and an unnecessary drain on the energies and resources of the litigants should plaintiffs sue individually." *Temple University v. Pennsylvania Department of Public Welfare,* 30 Pa. Commw. 595, 603, 374 A.2d 991, 996 (1977) (123 members sufficient); *ABC Sewer Cleaning Company v. Bell of Pennsylvania,* 293 Pa. Super. 219, 438 A.2d 616 1981) (250 members sufficient); *Ablin Inc. v. Bell Telephone Company of Pennsylvania,* 291 Pa. Super. 40, 435 A.2d 208(1981) (204 plaintiffs sufficiently numerous). Appellant need not plead or prove the actual number of class members, so long as he is able to "define the class with some precision" and provide "sufficient indicia [to the court] that more members exist than it would be practicable to join." *Janicik,* 305 Pa. Super. at 132, 451 A.2d at 456. (citations omitted)

Defendants claimed plaintiffs failed to meet the numerosity requirement because the class was not ascertainable. In Massachusetts, Comcast had 1,515,471 cable subscribers, of whom 187,362 subscribed for only basic cable services. Of these basic-only subscribers, 30,167 rented converter boxes or other equipment from Comcast. Less than two percent of Comcast's Massachusetts subscribers were basic-only subscribers who leased cable

equipment from Comcast.[10] Plaintiffs have failed to demonstrate how many such subscribers did not need the equipment or did not affirmatively request the equipment, orally or in writing. Nothing in defendants' records can provide answers to these questions.[11]

Plaintiffs have failed to demonstrate that the class is "so numerous that joinder of all members is impracticable." Even the representative plaintiffs cannot be counted towards fulfilling the numerosity requirement. The representative plaintiffs either needed or affirmatively requested a converter box. Plaintiffs have failed to meet the requirement of numerosity because without individual inquires, plaintiffs are unable to even ascertain the number of potential class members.[12]

Because plaintiffs failed to meet the requirements of typicality, commonality, or numerosity, the court will not reach the remaining requirements of Rule 1702. The court notes there is no question regarding the adequacy of the attorneys for the representative plaintiffs and their ability to adequately represent the interests of the class. The attorneys are certainly adequate to represent the interest of the class.

For the reasons set forth above, plaintiffs failed to meet the typicality, commonality, or numerosity requirements of Rule 1702 of the Pennsylvania Rules of Civil Procedure and plaintiffs' motion for class certification was denied.

---

10. Plaintiffs' exhibit 14, page 7, ¶2.

11. Defendants' memorandum of law in opposition to plaintiffs' motion for class certification, p. 55 ¶2.

12. Any possible class members who wanted "on demand" needed a converter box.