500 A.2d 1137

Larry D'AMELIO, Individually and on Behalf of all other Persons Similarly Situated, Appellant,

v.

BLUE CROSS OF LEHIGH VALLEY, and St. Luke's Hospital, Individually and on Behalf of All Other Hospitals Similarly Situated, Appellees.

Superior Court of Pennsylvania.

Argued Oct. 18, 1984.

Filed Oct. 11, 1985.

Reargument Denied Dec. 12, 1985.

442

Margaret H. Poswistilo, Thomas R. Elliott, Jr., Easton, for appellant.

William F. Brodt, Jr., Bethlehem, for St. Lukes, appellee.

Oldrich Foucek, III, Allentown, for Blue Cross, appellee.

Before CAVANAUGH, CIRILLO and JOHNSON, JJ.

CAVANAUGH, Judge:

This is an appeal from an order denying appellant/plaintiffs' motion for certification of a class action. The court below held that certification was not appropriate because plaintiffs failed to satisfy the commonality, typicality and adequacy of representation requisites for certification pursuant to Pa.R.C.P. 1702.[1] We disagree and, therefore, reverse and remand to the Court of Common Pleas to make additional findings of fact necessary for a determination of whether class certification is appropriate.

## I. FACTUAL HISTORY

The pertinent facts are as follows. Plaintiff, Larry D'Amelio, entered St. Luke's Hospital on October 23, 1979, with an admitting diagnosis of "depressive reaction." He was hospitalized at St. Luke's until November 23, 1979. D'Amelio, at admission and throughout his stay, was insured pursuant to an agreement between his employer, Shoemakers AMC Jeep, Inc., and Blue Cross of Lehigh Valley (hereinafter referred to as Blue Cross.) According to the terms of this agreement, D'Amelio was entitled to the benefits accorded in-patients provided that Blue Cross determined that his medical expenses were medically necessary. At the time of his admission, D'Amelio signed a payment guarantee where he, in effect, assumed the responsibility for payment to St. Luke's for his medical expenses not covered by Blue Cross which accrued during his stay.

---

1. There are five requirements which must be met for a court to certify a class action. The first, was stipulated to by counsel. The second and third, commonality and typicality, were found to be lacking by the court below. We disagree and, therefore, reverse as to these two requirements. The fourth, adequacy of representation is briefly mentioned in the lower court opinion, however, we find it necessary for the purpose of review to remand this case to the court below for additional findings regarding this requirement. And, finally, the fifth requirement, fair and efficient method of adjudication, was not considered by the court below and shall be disposed of on remand together with the fourth requirement.

At the times relevant to this appeal, St. Luke's had its own internal utilization review process, the purpose of which was to determine whether a stay or admission was medically necessary for insurance payment purposes. The process was used as a screening procedure whereby costs to Blue Cross would be kept down, and payment by Blue Cross to St. Luke's would be likely.

St. Luke's utilization review procedure, at the time of D'Amelio's admission and stay operated as follows. The day after admission, a utilization review coordinator on St. Luke's staff would review a patient's chart for medical necessity and treatment rendered. Ten days later a further review would be conducted. At that point, a coordinator would review the patient's record, examine the medical necessity of the treatment rendered and match it with established criteria for severity of illness, intensity of care and discharge screens. If no problem was detected, further reviews would be conducted periodically. If the coordinator questioned the necessity of medical services, the matter would be referred to a physician serving on the utilization review committee. If the committee physician also questioned the medical necessity, he would then contact the attending physician. If a dispute were to arise between the committee physician and the attending physician, the matter would be reviewed by a second committee physician. If a dispute still remained, a letter would be sent to the insurance carrier stating that the utilization review committee had recommended that medical necessity was not indicated beyond a specified date. The patient would also be sent a copy of that letter. Whether a patient chose to remain in the hospital thereafter rested within the discretion of the patient, his family and attending physician.

In Mr. D'Amelio's case, St. Luke's, through its utilization review committee, determined that plaintiff's hospitalization was medically necessary for the entire period of his stay.

Subsequent to plaintiff's discharge, St. Luke's submitted Mr. D'Amelio's hospital bill to Blue Cross, which employed its own utilization review procedure. As a result of Blue

Cross' review, it was determined that Blue Cross would provide benefits to D'Amelio for the period of October 23, 1979, to November 3, 1979. However, Blue Cross refused to provide benefits for the period from November 4, 1979, through November 23, 1979, on the basis that said period of hospitalization was not medically necessary. Thereafter, Blue Cross notified both St. Luke's and the plaintiff of its decision.

After the notification of denial of benefits, appellant appealed the denial through various internal review procedures. Ultimately, the initial decision to deny benefits was upheld by a panel of Blue Cross' reviewing psychiatrists.

Thereafter, because St. Luke's was not a participant in the waiver of liability program,[2] it sought payment of the unpaid balance of $2,208.15 directly from D'Amelio.

## II. PROCEDURAL HISTORY

Mr. D'Amelio brought a cause of action in trespass and assumpsit to obtain allocation of responsibility for costs of in-patient hospitalization for a class of plaintiffs. Appellant, in his action, seeks money damages and equitable relief on behalf of the plaintiff class from a health plan corporation, Blue Cross, and a class of defendant hospitals, of which St. Luke's as D'Amelio's health care provider was named class action representative. The complaint avers that the plaintiffs incurred medical expenses which were not paid by Blue Cross because Blue Cross retrospectively determined that the expenses were not medically necessary. The complaint continues by averring that because of Blue Cross' denial, the proposed members of the class are per-

---

**2.** Blue Cross designed a waiver of liability program in the mid-1970's, which all defendant hospitals joined at different times thereafter, up to 1980. Pursuant to this program, the hospital may not bill the patient for services determined by Blue Cross to have been medically unnecessary. In addition Blue Cross will only pay the hospital one half of one percent of the total days of care provided the subscriber, where the care is deemed medically unnecessary by Blue Cross. All expenses over and above one and one half percent are thus borne by the provider hospital. The goal of this program is to provide an incentive to the hospital to perform efficient utilization review.

sonally liable to the treating hospitals to pay their hospital expenses.

D'Amelio claims that Blue Cross breached its subscription agreement and implied contractual terms by retrospective denial of coverage. In the alternative, he argues that if the retrospective review and denial provisions were part of and authorized by the agreement, they were unconscionable and void as against public policy. Plaintiff also seeks relief as a third-party beneficiary of the Blue Cross-Hospital contract.[3] In addition, plaintiffs seek recovery on the basis of alleged violations of the Unfair Trade Practices and Consumer Protection Act, based upon alleged misrepresentations by Blue Cross.

Blue Cross filed preliminary objections, and plaintiff amended his complaint by redefining his class by reference to the contractual two year period of limitations. The redefined class then included subscribers *hospitalized* after September 10, 1979 instead of subscribers *denied coverage* after September 10, 1979. A later amendment named other hospitals similarly situated to St. Luke's thus creating a double class action. A third amendment to the definition of the class was made, proposing that the plaintiff class should include all subscribers of Blue Cross of Lehigh Valley who were hospitalized after September 10, 1975, and subsequently denied benefits. This amendment was made based on plaintiff's argument that Blue Cross did not act in good faith in denying the claims based on its medical necessity clause and therefore, the two year contractual period of liability found in the subscription agreement was unenforceable. Accordingly, the amendment provided that the class would include persons hospitalized over a six year and not a two year period of time.

3. At all relevant times, there existed a contract provision between Blue Cross and each defendant hospital whereby Blue Cross agreed to pay directly to the hospital the sum of money on behalf of its insured for hospital care and services rendered at such a hospital upon the recommendation of a physician who was either a member of the medical staff or who were otherwise acceptable to the hospital.

After the third amendment was made, pleadings were concluded and the case proceeded to a class certification hearing. By stipulation of counsel, it was agreed that in lieu of an evidentiary hearing, the issue of certification would be determined based on the record to date and oral argument. Based on the record and oral argument, the lower court denied plaintiff's Motion for Class Certification and plaintiff petitioned for reconsideration. Plaintiff's petition for reconsideration was denied. This appeal followed.

## III. STANDARD OF REVIEW

Appellants contend that the court below abused its discretion in holding that the second, third and fourth requirements and criteria for class certification were not met. Pa.R.C.P. 1702, 1708, 1709. We agree. The lower court's determination regarding class certification is a "mixed finding of law and fact entitled to 'appropriate deference' upon appeal." *Janicik v. Prudential Insurance Co. of America,* 305 Pa.Super. 120, 451 A.2d 451, 454 (1982) (quoting with approval from *Bell v. Beneficial Consumer Discount Co.,* 465 Pa. 225, 235, 348 A.2d 734, 739 (1975) *on remand,* 241 Pa.Super. 192, 360 A.2d 681 (1976)).

■ "Trial courts are vested with broad discretion in determining definition of the class as based on commonality of the issues and the propriety of maintaining the action on behalf of the class." *Klemow v. Time, Inc.,* 466 Pa. 189, 197, 352 A.2d 12, 16 (1975). *Accord, Sharkus v. Blue Cross of Greater Philadelphia,* 494 Pa. 336, 342–43, 431 A.2d 883, 886 (1981); *ABC Sewer Cleaning Co. v. Bell of Pennsylvania,* 293 Pa.Super. 219, 225–26 n. 4, 438 A.2d 616, 619 n. 4 (1981). Accordingly, the lower court's order granting or denying class certification will not be disturbed on appeal unless the court neglected to consider the requirements of the rules or abused its discretion in applying them. *See Janicik v. Prudential Insurance Co. of America, supra; Sharkus v. Blue Cross of Greater Philadelphia, supra; Klemow v. Time, Inc., supra; Bell v. Beneficial Consumer*

*Discount Co., supra. See also Zeidman v. J. Ray McDermott & Co.,* 651 F.2d 1030, 1050 (5th Cir.1981).

## IV. BURDEN OF PROOF

 It is well established law that the party seeking certification bears the burden of proving that the matter is maintainable as a class action. *Janicik v. Prudential Insurance Co. of America, supra; Klemow v. Time, Inc., supra.* Pennsylvania Rule of Civil Procedure 1702 denotes five prerequisites to class action certification: numerosity; common issues of law or fact; typicality; adequacy of representation; and, fairness and efficiency. The policy of our Commonwealth in regard to class certification is that "decisions in favor of maintaining a class action should be liberally made." *Bell v. Beneficial Consumer Discount Co., supra,* 241 Pa.Super. at 205, 360 A.2d at 688. When, as here, the underlying facts are not in dispute, the court may hold the burden more easily satisfied. *Ablin v. Bell Telephone Co. of Pennsylvania,* 291 Pa.Super. 40, 50 n. 5, 435 A.2d 208, 214 n. 5 (1981); *Wolfson v. Solomon,* 54 F.R.D. 584, 591 (S.D.N.Y.1972).

Once the pleadings are concluded, the party moving for class certification must present evidence at the certification hearing, establishing that the five prerequisites have been met. *See Janicik, supra.* Due to the overlapping and interrelated nature of the five prerequisites, the moving party may satisfy his burden by proving sufficient facts from which the court can properly determine that each of the five prerequisites have been met. *Janicik, supra; see Albin, Inc. v. Bell Telephone of Pennsylvania, supra,* 291 Pa.Super. at 48, 435 A.2d at 212 (typicality, commonality and adequacy of representation are closely related).

 Allegations pleaded by the class proponent, if admitted by the opposing parties, may be considered as evidence at the class certification hearing. Pa.R.C.P. 1706. After the proponent establishes a prima facie case for certification, the class opponent shoulders the burden, which has shifted, of coming forward with contrary evi-

dence challenging the prima facie case. Where there is an actual conflict on an essential fact, the class proponent bears the risk of non-persuasion.

## V. RELEVANT AUTHORITY

There is no dispute that Pa.R.C.P. 1702 establishes the requisites that must be met in order for a plaintiff class to be granted class certification. Pa.R.C.P. 1702, "Prerequisites to a Class Action", provides as follows:

One or more members of a class may sue or be sued as representative parties on behalf of all members in a class action only if

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

(4) the representative parties will fairly and adequately assert and protect the interests of the class under the criteria set forth in Rule 1709; and

(5) a class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708.

We shall discuss the above requisites *in seriatim* in the context of the case at bar. In addition to the relevant rules enacted by the Pennsylvania legislature and and cases interpreting them, and federal cases interpreting analogous federal rules, we find it necessary to carefully interpret the case of *Sharkus v. Blue Cross of Philadelphia,* 494 Pa. 336, 431 A.2d 883 (1981), as it is central to our analysis of the propriety of the denial of class certification in the instant case.

All parties rely primarily on *Sharkus* to reach their respective conclusions in regard to certification. The lower court, reading *Sharkus* in a fashion consistent with that of appellees, denied certification stating that *Sharkus* was

legally controlling, yet factually distinguishable from the instant case. We disagree. We believe that *Sharkus* is legally controlling, and factually similar to the instant appeal to an extent requiring the same result, i.e., a finding of typicality and commonality.

■ In *Sharkus*, plaintiffs, who were medical insurance subscribers, brought a class action against the insurer, Blue Cross, and provider hospitals. Plaintiff's complaint alleged that the insurer, by retrospectively reviewing and refusing to pay the hospital expenses of subscribers hospitalized upon the recommendation of the provider's staff physician, breached the subscription agreements and its fiduciary duty to administer the health care program in such a way as to protect its subscribers from unknowingly submitting to uncovered hospitalization. In addition, plaintiffs alleged, the hospital breached its duty to ensure that plaintiff/subscribers' hospitalizations were medically necessary. The Court of Common Pleas of Philadelphia entered an order dismissing plaintiffs' complaint on the grounds that it was not a proper class action and that the subscribers had failed to join certain indispensable parties as defendants.[4] The case was appealed to the Superior Court, which affirmed, and the subscribers appealed. On appeal, the Supreme Court held, *inter alia*, that: (1) class action relief was appropriate for those subscribers who were unfairly charged for their hospitalizations by their insurer's retroactive determination that hospitalizations were medically unnecessary.

## VI. DISCUSSION

### A. NUMEROSITY

The parties have stipulated that the numerosity requirement has been met, and the lower court accepted the stipulation, thus making further discussion unnecessary.

4. There is no issue regarding indispensable parties in the instant appeal.

## B. COMMONALITY

■ To satisfy the commonality requirement, plaintiffs must establish that their claim presents "questions of law or fact common to the class." Pa.R.C.P. 1702. While the existence of individual questions is not necessarily fatal, it is essential that there be a predominance of common issues shared by all class members which can be justly resolved in a single proceeding. *Klemow v. Time, Inc.,* 466 Pa. 189, 352 A.2d 12 (1976); *ABC Sewer Cleaning Co. v. Bell of Pennsylvania,* 293 Pa.Super. 219, 438 A.2d 616 (1981).

Plaintiffs contend that class certification is appropriate because the common issue predicated on any of the proferred theories is the fairness of Blue Cross' retrospective determination that all or a portion of their hospitalization was not medically necessary and, thereafter, the defendant hospitals charging them directly for the unreimbursed costs of services and supplies.

Blue Cross alleges that plaintiffs have failed to adequately set forth the underlying facts for the court below to make its conclusions or, alternatively, that the question of medical necessity is a factual determination for each individual plaintiff. St. Luke's joins in Blue Cross' arguments, and further maintains that each member hospital performs its own procedure for utilization review resulting in different interpretations of medical necessity.

We agree with appellants that the common issue among class plaintiffs is whether the retrospective denial of benefits by Blue Cross predicated upon lack of medical necessity is unfair under any of the theories averred in plaintiff's complaint. We believe that this issue was also the same issue as presented in *Sharkus, supra.* The *Sharkus* court stated,

> The basic issue that is common to all members of the proposed class is stated by appellants as follows:
> "If Blue Cross was justified in revoking its payment on the grounds that the hospitalization was 'not medically necessary,' then defendant hospital (acting through the Hospital Director or his delegates) must bear the re-

sponsibility for permitting a hospital admission that was not medically necessary. On the other hand, if a hospitalization was sufficiently 'medically necessary' to justify the hospital in accepting the admission, then it is *prima facie* unconscionable to permit Blue Cross with hindsight to apply a more stringent definition of 'medical necessity' and leave the patient caught in the middle."

494 Pa. 336, 345–46, 431 A.2d at 887.

Like *Sharkus*, the class action at bar seeks not to prove that plaintiffs' hospitalizations were, in fact, medically necessary. Instead, like *Sharkus*, plaintiffs in the instant case seek a legal determination that: 1) Blue Cross subscribers may not be held liable for the costs of hospitalization retroactively denied by Blue Cross on the ground that they were medically unnecessary; and, 2) where Blue Cross disagrees with the determination by the hospital that hospitalization was medically necessary, a solution to that problem must be reached by Blue Cross and the hospital.[5]

The lower court distinguished *Sharkus* on three factual grounds which we do not believe are controlling. First, the court below stated that "unlike *Sharkus*, the instant subscription agreement specifically provides that 'Blue Cross will not provide coverage for medical services that are not medically necessary.' "[6] The lower court also said in regard

**5.** The institution of the waiver of liability program is directly responsive to appellant's second concern.

**6.** Although the lower court found, in its supplemental opinion filed after consideration of appellants' Petition for Reconsideration, that the contract language (as excerpted *infra*) *was* medical necessity language, it distinguished the two cases. The lower court said, "[h]owever, the language was limited to the situation in which Blue Cross agreed to pay the provider hospitals when the services were rendered upon the recommendation of a physician. Nowhere in the relevant contracts themselves did Blue Cross reserve itself the unilateral right to retrospectively review the question of 'medical necessity' of hospitalization." We believe that the lower court's distinction is fallible. Although Blue Cross did not *expressly* reserve to itself the unilateral right to retrospectively review "medical necessity", it is unfathomable that the medical necessity clause, in the context of the contract, be read or interpreted any other way. Clearly, Blue Cross, in its contract clause regarding medical necessity is not providing for

to *Sharkus,* "a class action was proper because there were no individual questions of medical necessity present. It was the practice of reaching the decisions themselves which was attacked. In the case at bar, benefits are being denied pursuant to the express terms of the agreement. If Blue Cross breached the agreement, it must have been when it incorrectly determined that a period of hospitalization was not medically necessary." This conclusion is erroneous on two grounds. First, it does not take into account all of the theories of recovery plaintiff alleges, e.g., this conclusion is irrelevant to plaintiff's unconscionability argument. Second, the correctness of Blue Cross' determination of medical necessity is not at issue here, instead it is the procedure underlying the, denial of benefits. As aptly stated by the court below in regard to *Sharkus,* and which in our opinion likewise may be applied to the case at bar, "class certification was appropriate because there was only an ultra vires policy that was being challenged, and not an individual, factualized determination."

The lower court is correct in its recitation of the subscription agreement provision in the instant case. However, it is incorrect in asserting that this provision is unlike *Sharkus.* Plaintiff Riloff in *Sharkus* was initially denied coverage on the basis of her subscription agreement which provided, *inter alia,* that:

Benefits shall not be provided under this Agreement for:

. . . .

 f. In patient hospitalization ... when ... the nature of the procedure *does not necessitate* that the Subscriber be hospitalized as an in-patient; (emphasis added)

. . . .

It is clear from reading *Sharkus* that Riloff's physician at the treating hospital recommended that in-patient hospital-

the determination to be made by the patient, doctor, or hospital, nor does it provide for a join decision to be made by Blue Cross and any other party. In fact, it is clear in *Sharkus* that plaintiffs' Blue Cross' approved physicians recommended that plaintiffs be hospitalized on the basis of medical necessity.

ization was medically necessary. Therefore, although the language was not as succinct as in the case at bar, the contract provision cited above was relied upon by Blue Cross in denying coverage to Riloff when it determined that hospitalization was not medically necessary. That is, Blue Cross' decision to deny benefits to Riloff was predicated on its power to deny benefits as stated in subsection f. Therefore, we hold that although the contract language in *Sharkus* and the instant case is not identical, there is a express provision in both whereby Blue Cross may unilaterally and retrospectively deny benefits to the subscriber.[7] Whether it is reasonable that the subscriber would read the medical necessity clause as meaning that Blue Cross could deny benefits months after the subscriber's discharge is a valid question affecting the plaintiffs in both *Sharkus* and the case at bar.

Second, the court below places undue weight on the perceived fact that "*Sharkus* involved an action where both defendant hospitals' utilization committee *and* Blue Cross determined that the plaintiffs' hospitalizations were not medically necessary. Therefore, medical necessity was not an unresolved issue of fact. In the instant case, there is a dispute as to medical necessity for hospitalization."

Our reading of *Sharkus* does not support the lower court's interpretation of *Sharkus*. *Sharkus* does not say that the hospital utilization review committee and the Blue Cross utilization review committee agreed that plaintiff's hospitalization was medically unnecessary. It is unclear whether that fact existed in the *Sharkus* case as to all or some patients. It is not apparent that the *Sharkus* court placed much, if any, weight on this fact. It is clear from reading *Sharkus* that the Blue Cross approved treating physicians at the defendant hospitals felt that plaintiffs' hospitalizations were medically necessary. There is no mention in the *Sharkus* opinion of a specific hospital utiliza-

---

**7.** We believe that the subscription agreement exemption clauses at issue, although not identical, would cause similar expectations in the subscribers to arise.

tion review committee or what action it took in relation to plaintiffs Sharkus and Riloff. In any case, the fact remains, regardless of any determination made by the hospital review committee, that in *Sharkus* and in the instant case, plaintiffs were told by their Blue Cross approved treating physicians that hospitalization was medically necessary and that at some point after discharge all plaintiffs were denied all or part of the benefits because Blue Cross determined that their hospitalizations had been medically unnecessary.

In addition, a factual determination of medical necessity regarding the plaintiffs in either case is not required or relevant to dispose of the certification issue, nor is it sought by plaintiffs. Plaintiffs simply seek a determination of the legality of Blue Cross' actions. It is the procedural practice in denying the benefits which is at issue in both *Sharkus* and the case at bar, not a patient by patient determination that the denial, on the medical merits of each patient's case, was improper. We believe, contrary to the court below, that the issue herein is whether the procedure by which a subscriber's hospital bills are either covered or denied by Blue Cross is impermissible, *not* whether the decision by the treating doctor, the provider hospital or Blue Cross was medically correct.

Third, the lower court states that all of the plaintiffs in *Sharkus* were directly responsible for costs not paid by Blue Cross. This was because the defendant hospitals in *Sharkus* did not participate in a waiver of liability program. In contrast, all defendant hospitals in the instant case, at the time the lawsuit was filed, had at some time instituted waiver of liability programs. We do not see why this factual distinction requires us to ignore *Sharkus.* Obviously, as the lower court observed, "[t]hose plaintiffs who were treated prior to their hospital entering the program remain liable for the expenses not covered by Blue Cross, but those plaintiffs who were hospitalized subsequent to the institution of the program are absolved of liability." The lower court observation leads to the conclusion that those patients

not sought out by the treating hospital for payment after being denied coverage by Blue Cross will not be included in the plaintiff class. In other words, only those patients who: 1) were treated at a defendant hospital at a time when that hospital did not participate in the waiver of liability program, 2) were later denied Blue Cross benefits; and, 3) were billed by the treating hospital, shall be included in the plaintiff class.

■ To reiterate, we believe that the following factual parallels in *Sharkus* and the instant case mandate a finding of commonality and typicality. In both cases, plaintiffs were treated at a defendant hospital, which hospital had a subscription agreement with Blue Cross. In both cases, plaintiffs were informed by their treating physician approved by Blue Cross that hospitalization was necessary. In both cases, plaintiffs, upon their physicians' advice, received in-patient hospitalization and services. In both cases, plaintiffs were denied coverage or partial coverage by Blue Cross for their in-patient hospital care on the basis that such hospitalization had been medically unnecessary pursuant to Blue Cross' determination. In both cases, the determination of medical necessity adverse to the subscriber was made despite the recommendation to the contrary by the treating physician, Blue Cross approved doctor, and after the subscriber had been discharged from the hospital. And, in both cases, after Blue Cross denied coverage, the hospitals demanded payment from the subscribers.

In addition, we believe that the lower court's reasons for departing from *Sharkus* are not persuasive. Contrary to the lower court's conclusion, we find that *Sharkus* is controlling in our disposition of the case at bar. In reaching this holding, we expressly highlight our observation that individual determinations of medical necessity are not needed in *Sharkus* or at the case at bar in order to prove a *prima facie* case of liability, and that the plaintiffs herein present common issues of law and fact regarding the propriety of retrospective denial of benefits by Blue Cross.

We also note that the court below apparently did not exercise the discretion it has under Pa.R.C.P. 1710(c)(2) which provides:

> (c) When appropriate, in certifying, refusing to certify or revoking a certification of a class action the court may order that

> (2) a class be divided into subclasses and each subclass treated as a class for purposes of certifying, refusing to certify or revoking a certification and that the provisions of these rules be applied accordingly.

Since we are remanding to the court below, the court should state in its opinion whether it considered dividing the class into subclasses, and if it divides into subclasses specific findings should be made under Pa.R.C.P. 1702(1)(2) and (3).

## C. TYPICALITY

Appellant must show that her "claims or defenses ... are typical of the claims or defenses of the class." Pa.R. Civ.P. 1702(3). The typicality requirement is closely akin to the requirements of commonality and the adequacy of representation. *Ablin, Inc. v. Bell Telephone Co. of Pennsylvania, supra* 291 Pa.Superior Ct. at 40, 435 A.2d at 212. Its purpose is to determine whether the class representative's overall position on the common issues is sufficiently aligned with that of the absent class members to ensure that her pursuit of her own interests will advance those of the proposed class members. *Id.; Peil v. National Semiconductor Corp.,* [105 F.R.D. 463] *supra. Accord, Luitweiler v. Northchester Corp., supra* 456 Pa. [530] at 534, 319 A.2d [899] at 902 (must appear that relief sought beneficial to all class members); *Penn Galvanizing Co. v. Philadelphia, supra* 388 Pa. [370] at 378, 130 A.2d [511] at 515 (footnote omitted).

*Janicik* 305 Pa.Super at 134, 451 A.2d at 457–58.

The court below found that the requirement of typicality as defined above was lacking in the instant case.[8]

The lower court opinion states that "the complaint seeks recovery for all those persons during a six year period who were retrospectively denied benefits by Blue Cross. However, the complaint fails to differentiate among plaintiffs." The court predicates this statement on the fact that the treating hospitals entered waiver of liability programs at different times during the defined six year period. The legal consequence of the lower court's statement is simply that a person treated during the six year period but after the treating hospital had adopted the waiver of liability program would not be included in the plaintiff class. This is because pursuant to the waiver of liability program, the hospital would, after denial of benefits by Blue Cross, be precluded from seeking payment directly from the patient. In addition, payment would not have been sought from a patient whose charges the hospital wrote off as either insignificant in amount or as a bad debt. Since we believe that plaintiff, D'Amelio, is typical in that he represents those patients who were retrospectively denied benefits and were later requested by the hospital to pay their hospital bills, which by definition does not include those patients treated by a hospital while the hospital was active in the waiver of liability program, or where the hospital never sought payment from the patient, we find this distinction unpersuasive. These patients obviously suffered no harm and, therefore, are by devinition of the various causes of action, not plaintiffs included in the class.

D'Amelio's claim is typical of the class as a whole. His "claim arises from the same practice or course of conduct" on the part of Blue Cross and defendant hospitals that give rise to the potential claims of every other member of his class, namely, that each was treated by a defendant hospital later denied benefits by Blue Cross, and approached by the hospital for direct payment. *Ablin, Inc. v. Bell Tel. Co. of Pa.*, 291 Pa.Super. 40, 50, 435 A.2d 208, 213 (1981). The

---

**8.** *See* opinion of the court at 10 n. 2.

question of law or fact common to the class is the allegedly unfair retrospective denial of Blue Cross benefits on medical necessity grounds, thus causing the patient to be liable to the treating hospital. Viewing D'Amelio as class representative, his claim is identical to every other plaintiff in the class. We believe that the lower court abused its discretion in not so finding.

In addition, the court below places much weight on a perceived necessity for an individual determination of medical necessity for each patient in determining that plaintiff's claim is not typical. For the reasons discussed earlier in this opinion, we believe that the issue in this case closely parallels that in *Sharkus* and that no individual determination of medical necessity is at issue in the instant certification action, nor will it be required to be made to dispose of the case on its merits.

## D. ADEQUACY OF REPRESENTATION

The lower court addressed this requirement briefly in a footnote by stating that "the adequacy of representation requirement is closely akin to the requirements of commonality and typicality. Therefore, our discussion of those requirements is applicable to the adequacy of representation requirement." We agree that the commonality, typicality, and adequacy of representation requirements are closely related. However, in determining whether the adequacy of representation requirement is satisfied, Rule 1709 sets forth criteria to be considered in conjunction with this requirement only. Pa.R.C.P. 1709 provides:

**Criteria for Certification. Determination of Fair and Adequate Representation**

In determining whether the representative parties will fairly and adequately assert and protect the interests of the class, the court shall consider among other matters

(1) whether the attorney for the representative parties will adequately represent the interests of the class,

(2) whether the representative parties have a conflict of interest in the maintenance of the class action, and

(3) whether the representative parties have or can acquire adequate financial resources to assure that the interests of the class will not be harmed.

■ We believe that the three criteria set forth in 1709 require the lower court to consider evidence and find facts distinct from those necessary in its determination regarding the requisites of commonality and typicality. We do not believe that the court's statement of the law set forth in footnote two is erroneous; however, since these are additional considerations set forth in 1709 specific and unique to the determination of adequacy of representation which are not addressed in the lower court opinion, we are uneasy in addressing this issue on appellate review without the benefit of the lower court's factual findings and legal conclusions regarding the criteria in Rule 1709. Therefore, we direct the lower court to make specific findings as to this requisite as well as to requisite (5).

In conclusion, we find that the court below erred in the following findings supporting the denial of class certification:

1. Individual issues of fact and law predominate over common issues of fact and law precluding certification of the proposed plaintiff class; and,

2. The claims of the named plaintiff are atypical of the members of the proposed plaintiff class. Pa.R.C.P. 1702(3).

Accordingly, we reverse. Remand for findings pursuant to Pa.R.C.P. 1702(4) and (5) and Pa.R.C.P. 1702(1)(2) and (3) if appropriate.[9] Jurisdiction relinquished.

**9.** The criterion of fair and efficient method of adjudication pursuant to Rule 1702(5) was expressly not addressed by the lower court. *See* op. at 10 n. 2.