## Jackowski v. Guardian Protection Services Inc.

*Edwin P. Smith,* for plaintiffs.
*Raymond McGarry,* for defendant.

LEVIN, *S.J.,* June 29, 2001—

## INTRODUCTION

Patricia A. Jackowski and James Gaither, plaintiffs, bring claims for monetary damages on behalf of a proposed class of similarly situated individuals against Guardian Protection Services Inc., defendant, arising out of defendant's alleged misrepresentation of material facts to plaintiffs and members of the class in connection with the marketing and sale of "free" home burglar alarm systems. Plaintiffs assert that defendant's use of the word "free" amounted to a violation of the Consumer Protection Law. Specifically, plaintiffs argue that defendant's use of the term "free" in its advertisements had a "tendency to deceive a substantial segment of the audience and was likely to have made a difference in the consumer's purchasing decisions." (Plaintiffs' reply brief sur motion for class action at p. 3.)

Plaintiffs' counsel offers two individuals as class representatives. The first class representative, Patricia Jackowski, completed defendant's contest entry form at the Franklin Mills Mall in Philadelphia. Soon thereafter she received a telephone call at her home advising her that

she "won" the "free" home security alarm system, and that a representative of defendant's corporation would soon visit her home to install the security system. A representative from defendant's company came to Ms. Jackowski's home and installed the home security system. When the installation was completed, the installer asked Ms. Jackowski to sign a contract, which she initialed in two places and signed. She did not read the contract and therefore was unaware of the agreement into which she had just entered. Not until Ms. Jackowski received her first monthly monitoring bill about two weeks after installation did she realize that she was responsible for paying a monthly monitoring fee.

Having executed the monitoring agreement, Ms. Jackowski made one monthly payment of $27.95. After making the first payment, however, Ms. Jackowski did not make any more of the monthly payments. Thereafter, defendant corporation sued Ms. Jackowski before a district justice in Allegheny County. However, due to the intervention of her present legal counsel, defendant withdrew the action. Nevertheless, defendant sued Ms. Jackowski in the Municipal Court of Philadelphia, but withdrew the action upon the intervention of counsel.

The second class representative, James Gaither, completed one of defendant's "entry" forms at the Franklin Mills Mall in early March 1996. Mr. Gaither was soon contacted by defendant and told that he had "won" the "contest" for a "free" installed home security system. Then, on March 27, 1996, defendant's installer visited Mr. Gaither's home when Mr. Gaither was not present. Mr. Gaither's housemate, Sylenthia English, was home when the installer from defendant's company arrived.

After completing installation of the system the installer asked Ms. English to sign the monitoring agreement, which she did by handwriting her name and Mr. Gaither's name at the top of the agreement, by initialing in two places, and by signing at the bottom of the contract.

Shortly thereafter, Mr. Gaither and Ms. English received a monthly monitoring bill from defendant. As Mr. Gaither had not personally signed the monthly monitoring agreement, he only became aware of his new obligation to defendant upon his receipt of the first monthly monitoring bill. Mr. Gaither made approximately five monthly payments of $27.95 to defendant, but ceased making any further payments. As a result, defendant sued both Mr. Gaither and Ms. English in a district court in Allegheny County. The court entered a default judgment in the amount of $2,213.80, which defendant later transferred to the Municipal Court of Philadelphia.

Plaintiffs claim that defendant has violated the Consumer Protection Law, 73 P. S. §211-2(4)(ix), relating to false advertising. Specifically, plaintiffs claim that defendant's offer of a "free" alarm system was a material misrepresentation, "and was likely to have made a difference in the consumer's purchasing decisions." (Plaintiffs' revised proposed findings of fact and conclusions of law, ¶4.)[1] Plaintiffs assert that the defendant's "contest" was "merely a sham for the purpose of obtaining sales leads, because defendant intended that every

---

1. Plaintiffs also assert numerous claims regarding violations of the CPL, citing defect in (1) the form of the contract signed after installation, including the placement of the forum selection clause, (2) the notice of cancellation, and (3) the negotiable nature of some of the transactions in conjunction with the word "free."

person who entered the 'contest' would be advised that they had won the 'contest.'" (Plaintiffs' motion for class certification, ¶6a.)[2] Furthermore, plaintiffs assert that all the forms related to the offering of a "free" alarm system were unlawful because they failed to "adequately advise potential customers that the alarm system was not 'free,' but requir[ed] a monitoring contract in order to obtain said alarm system." (Plaintiffs' motion for class certification, ¶6b.)

Plaintiffs assert that defendant has violated three specific sections of the CPL: (1) 73 P.S. §201-7 (notice of cancellation), (2) 73 P.S. §211-2(4)(ix), and (3) 73 P.S. §201-2(4)(xvii) and as amended section 201-2(4)(xxi) (fraudulent and deceptive conduct: catch all). (Plaintiffs' seventh amended complaint.) Plaintiffs further argue that, by violating the CPL, defendant has thereby breached the terms of the assurance of voluntary compliance entered into between defendant and the Pennsylvania Attorney General.

The assurance is an agreement entered into on November 10, 1994, between defendant and the attorney general in which defendant agrees, inter alia, to "comply with the Pennsylvania Consumer Protection Law and pursuant thereto, the Federal Trade Commission Guidelines on the use of the term 'free' and related issues." (See assurance of voluntary compliance, plaintiffs' seventh amended class action complaint, exhibit "F" at p.

---

2. Lawrence E. Wargo, executive vice president of Guardian Protection Services, testified that all contestants who met the contest's eligibility requirements won the "contest." The eligibility requirements are stated on the contest form, and include being a homeowner, having a telephone, and agreeing to a home monitoring agreement. (N.T. 6/8/99 at pp. 20-21.)

2.) Furthermore, plaintiffs argue that defendant has breached the FTC regulations relating to the term "free." The FTC regulations state in pertinent part, "disclosure of the terms of the offer set forth in a footnote of an advertisement to which reference is made by an asterisk or other symbol placed next to the offer, is not regarded as making disclosure at the outset." 16 C.F.R. §251.1(C).[3]

Plaintiffs seek various equitable and legal damages for these alleged violations of the CPL. First, plaintiffs seek to have all Allegheny and Philadelphia judgments "stricken and the actions terminated and defendant be enjoined from continuing the aforesaid deceptive practices." (Plaintiffs' motion for class certification, ¶6f.) Plaintiffs further seek damages pursuant to 73 P.S. §201-9.2, which they claim entitles them to actual damages *or* $100 per violation of the CPL, whichever is greater, and to any additional relief that is necessary and proper. (Plaintiffs' post-hearing memorandum, pp. 1-2). Third, plaintiffs seek restitution of any monies they have paid in monthly monitoring fees; and fourth, plaintiffs seek rescission of the contract. (Plaintiffs' reply brief sur motion for class action at p. 8.)

The pleadings in this matter are closed, and plaintiffs' motion for class certification was heard on November 28, 2000. Accordingly, this court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

(1) Plaintiffs are citizens of the Commonwealth of Pennsylvania who, on or after August 30, 1994, entered

---

3. Plaintiffs further cite 16 C.F.R. §251.1(g), which prohibits "free" offers in conjunction with "negotiated" sales.

into a contest sponsored by defendant to win, or were offered a "free" residential alarm system.

(2) Defendant is a corporation with its principle place of business in Allegheny County, Pennsylvania.

(3) Defendant is in the business of selling, maintaining, and monitoring residential alarm systems throughout the Commonwealth of Pennsylvania and other states.

(4) On August 30, 1994, defendant's Board of Governors agreed to enter into an assurance of voluntary compliance with the Office of Attorney General of the Commonwealth of Pennsylvania pursuant to the Unfair Trade Practices and Consumer Protection Law, 75 P.S. §201-5, and in lieu of statutory proceedings pursuant to section 201-4 of that law for prior conduct.

(5) Under the terms of the assurance, defendant agreed to comply with Federal Trade Commission guidelines on the "use of the word 'free' and similar representations," 16 C.F.R. §251, and the Commonwealth's "policy statement on 'free' and related issues," as it pertained to all advertisements.

(6) Defendant engaged in a promotional scheme whereby defendant ran a contest offering a "free" home security system to all those "contestants" who fulfilled certain requirements.

(7) Every contestant who owned a home, had a phone, and agreed to a home monitoring contract, "won" the "contest." (See N.T. 6/8/99 at pp. 20-21.)

(8) During the class period, all of defendant's entry forms use an asterisk to disclose that each contestant must enter into a monitoring agreement in order to win the "contest."

(9) At the time Patricia Jackowski completed defendant's contest entry form at the Franklin Mills Mall in

Philadelphia, she was unaware of the responsibility to pay a monthly monitoring fee if she "won" the "contest."

(10) Soon thereafter Ms. Jackowski received a telephone call at her home advising her that she "won" the "free" home security alarm system, and that a representative of defendant's corporation would soon visit her home to install the security system.

(11) On December 22, 1995, a representative from defendant's company came to Ms. Jackowski's home and installed the home security system.

(12) When the installation was completed the installer asked Jackowski to sign a sales and monitoring agreement, which she initialed in two places and signed.

(13) Ms. Jackowski did not read the contract and therefore was unaware of the monthly monitoring agreement into which she had just entered.

(14) Not until Ms. Jackowski received her first monthly monitoring bill about two weeks after installation did she realize that she was responsible for paying a monthly monitoring fee.

(15) Having executed the monitoring agreement, Ms. Jackowski made one monthly payment of $27.95. After making the first payment however, Ms. Jackowski did not make any more of the monthly payments due.

(16) Thereafter, defendant corporation sued Ms. Jackowski before a district justice in Allegheny County; however, due to the intervention of her present legal counsel, defendant withdrew the action.

(17) Nevertheless, defendant sued Ms. Jackowski in the Municipal Court of Philadelphia, but withdrew the action upon the intervention of counsel.

(18) At the time James Gaither completed one of defendant's "entry" forms at the Franklin Mills Mall in early March 1996, he was unaware of the responsibility to pay a monthly monitoring fee if he "won" the "contest."

(19) Mr. Gaither was not eligible to enter the contest because he did not own the home where he and his girlfriend lived (home ownership being one of the three requirements to enter the "contests").

(20) When Mr. Gaither entered the contest he was unaware that he was ineligible to enter the contest.

(21) Mr. Gaither was soon contacted by defendant and told that he had "won" the "contest" for a "free" installed home security system.

(22) A representative from defendant's company visited Mr. Gaither's home as an initial consultation.

(23) Before installation, Mr. Gaither never spoke to his housemate/girlfriend about the alarm system.

(24) Then, on March 27, 1996, defendant's installer visited Mr. Gaither's home when Mr. Gaither was not present.

(25) Mr. Gaither's housemate, Sylenthia English, was home when the installer from defendant's company arrived. After completing installation of the system, the installer asked Ms. English to sign the sales and monitoring agreement.

(26) Ms. English signed the sales and monitoring agreement, signing both her name and Mr. Gaither's.

(27) Shortly thereafter, Mr. Gaither and Ms. English received a monthly monitoring bill from defendant.

(28) Mr. Gaither at first became aware of his new obligation to defendant upon his receipt of this first monthly monitoring fee.

(29) Mr. Gaither made approximately five monthly payments of $27.95 to defendant, but ceased making any further payments.

(30) Defendant sued both Mr. Gaither and Ms. English in a district court in Allegheny County.

(31) The court entered a default judgment in the amount of $2,213.80, which defendant later transferred to the Municipal Court of Philadelphia.

(32) Plaintiffs seek class certification of their claims under two "sub-classes," as follows:

"*Class I*

"(a) All persons who, within the Commonwealth of Pennsylvania and on or after August 30, 1994, entered into a contest sponsored by defendant to win, or were offered a 'free' residential alarm system, upon forms supplied by defendant which were the same or similar to those attached under exhibit 'A' to the complaint and

"(b) Claimed by defendant to have executed or did execute a sales and monitoring agreement [with defendant], and

"(c) Have become indebted to or paid money to defendant as a result of the foregoing.

"*Class II*

"(a) All persons included in Class I and who were sued by defendant in Allegheny County based upon an alleged failure to pay for monitoring services, and

"(b) Defendant obtained judgment in Allegheny County based upon the failure of the person sued to appear and defend."

## CERTIFICATION

It is this court's present responsibility to determine whether plaintiffs' suit is properly certifiable as a class action. In this respect, our authority is limited by the Pennsylvania Rules of Civil Procedure: "[t]he hearing is confined to a consideration of the class action allegations and is not concerned with the merits of the controversy or with attacks on the other averments of the complaint. Its only purpose is to decide whether the action shall continue as a class action or as an action with individual parties only." Pa.R.C.P. 1707 (Explanatory note-1977).

Thus, for the time being, we must refrain from ruling on plaintiffs' ultimate right to recovery and on the merits of any defense raised.

Our decision at this stage is limited to whether plaintiffs have satisfied the requirements described in Pa.R.C.P. 1702:

*"Rule 1702: Prerequisites to a class action*[4]

"One or more members of a class may sue or be sued as representative parties on behalf of all members in a class action only if

"(1) the class is so numerous that joinder of all the members is impracticable;

"(2) there are questions of law or fact common to the class;

---

4. The burden of proving that class certification is appropriate clearly falls upon the party seeking certification. *D'Amelio v. Blue Cross of Lehigh Valley,* 347 Pa. Super. 441, 449, 500 A.2d 1137, 1141 (1985); *Janicik v. Prudential Insurance Co.,* 305 Pa. Super. 120, 128, 451 A.2d 451, 454 (1982).

"(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

"(4) the representative parties will fairly and adequately assert and protect the interests of the class under the criteria set forth in Rule 1709; and

"(5) a class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708."

In applying the rules described above, courts have uniformly held it is the Commonwealth of Pennsylvania's policy that decisions in favor of maintaining a class action should be liberally made. *D'Amelio v. Blue Cross of Lehigh Valley,* 347 Pa. Super. 441, 448, 500 A.2d 1137, 1141 (1985); *Bell v. Beneficial Consumer Discount Co.,* 241 Pa. Super. 192, 205, 360 A.2d 681, 688 (1976) (class suits enable the assertion of many meritorious claims that might not otherwise be litigated); accord, *Janicik v. Prudential Insurance Co.,* 305 Pa. Super. 120, 128, 451 A.2d 451, 454 (1982).

With regard to class certification, trial courts are also vested with broad discretion in defining the class with respect to commonality of the issues and the propriety of maintaining the action on behalf of the class. *Klemow v. Time Inc.,* 466 Pa. 189, 197, 352 A.2d 12, 16 (1976); accord, *Sharkus v. Blue Cross of Greater Philadelphia,* 494 Pa. 336, 342-43, 431 A.2d 883, 886 (1981); *Prime Meats Inc. v. Yochim,* 422 Pa. Super. 460, 467, 619 A.2d 769, 773 (1993); *ABC Sewer Cleaning Co. v. Bell of Pennsylvania,* 293 Pa. Super. 219, 225, 438 A.2d 616, 619 (1981).

Following is a discussion of the factors this court weighed in ruling on class certification.

## 1. *Numerosity*

To determine if the numerosity requirement has been satisfied, a court should examine "whether the number of potential individual plaintiffs would pose a grave imposition on the resources of the court and an unnecessary drain on the energies and resources of the litigants." *Temple University of the Commonwealth System of Higher Education v. Pennsylvania Department of Public Welfare,* 30 Pa. Commw. 595, 603, 374 A.2d 991, 996 (1977); accord *ABC Sewer,* 293 Pa. Super. at 225, 438 A.2d at 619; *Ablin Inc. v. Bell Telephone Company of Pennsylvania,* 291 Pa. Super. 40, 51, 435 A.2d 208, 214 (1981).

Plaintiffs seek class certification of their claims under two "sub-classes," as follows:

"*Class I*

"(a) All persons who, within the Commonwealth of Pennsylvania, and on or after August 30, 1994, entered into a contest sponsored by defendant to win, or were offered a 'free' residential alarm system, upon forms supplied by defendant which were the same or similar to those attached under exhibit 'A' to the complaint, and

"(b) Claimed by defendant to have executed or did execute a sales and monitoring agreement [with defendant], and

"(c) Have become indebted to or paid money to defendant as a result of the foregoing.

"*Class II*

"(a) All persons included in Class I and who were sued by defendant in Allegheny County based upon an alleged failure to pay for monitoring services, and

"(b) Defendant obtained judgment in Allegheny County based upon the failure of the person sued to appear and defend." (Plaintiffs' revised proposed findings of fact and conclusions of law at p. 1.)

Thus, plaintiffs have divided themselves into two classes for class certification purposes. Class I consists of all those who entered the contest and signed a monitoring agreement with defendant.[5] Class II consists of Class I members who were sued by defendant in Allegheny County. Plaintiffs assert that there are at least 133 persons in Class I, all who entered the "contest" at Franklin Mills Mall, and that at least 37 of those contestants were sued and had judgments entered against them. (Plaintiffs' revised proposed findings of fact and conclusions of law, p. 5.)

This court is able to discern who the potential class members are in this case. This court is also satisfied that the proposed classes, were they to be certified, are sufficiently numerous such that the number of potential individual plaintiffs in this case would pose a great imposition on the resources of the court. At least 133 people won defendant's "contest" and signed sales and monitoring agreements, perhaps many more. Therefore, this court is satisfied that plaintiffs' proposed classes meet the numerosity requirement.

## 2. *Commonality*

For class certification, plaintiffs must also establish that their claim presents "questions of law or fact com-

5. As all members of Class II are contained within Class I this analysis will focus on Class I members only, with the understanding that it also applies to Class II members. Furthermore, Class I members and Class II members shall be collectively referred to herein as the "class."

mon to the class." Pa.R.C.P. 1702(2). "The common question of fact means precisely that the facts must be substantially the same so that proof as to one claimant would be proof as to all." *Allegheny County Housing Authority v. Berry,* 338 Pa. Super. 338, 342, 487 A.2d 995, 997 (1985). While the existence of individual questions essential to a class member's recovery is not necessarily fatal to the class, there must be a *"predominance* of common issues shared by all class members which can be justly resolved in a single proceeding." *Weismer v. Beech-Nut Nutrition Corp.,* 419 Pa. Super. 403, 408-409, 615 A.2d 428, 431 (1992) (emphasis in original); *D'Amelio,* 347 Pa. Super. at 451, 500 A.2d at 1142; *Janicik,* 305 Pa. Super. at 132, 451 A.2d at 457; see also, Pa.R.C.P. 1708(a)(1).

Here, plaintiffs assert that common issues of law exist among members of the proposed class. Plaintiffs argue that "there are questions of law common to the class as well as common questions of fact surrounding the use of the false advertisements and unlawful contract forms . . . ." (Plaintiffs' revised proposed findings of fact and conclusions of law, p. 11.)

Specifically, plaintiffs argue that defendant "used the same procedure of obtaining leads through the use of a sham contest, the same contracts, the same unlawful notice of cancellation forms, the same method of obtaining judgments against those who did not pay." (Plaintiffs' class action certification memorandum of law, p. 12.) Plaintiffs argue that defendant engaged in the "same" illegal conduct with regard to every class member, and therefore the requirement of commonality has been met.

The record here supports plaintiffs' contention that defendant engaged in the same conduct with each and every class member. The responses to question no. 3 of plaintiffs' "class action questionnaire" demonstrate that defendant acted consistently toward all plaintiffs at the time they entered the "contest." Question 3 to the questionnaire asks, "[w]hen entering [the contest], did you know that if you won and had the system installed that you would be responsible to pay monthly monitoring charges? Yes or No."[6] All but one of the 38 respondents to this question answered "no"—indicating that at the time of entering the "contest" they did not know that if they won the "contest" and had the system installed that they would be responsible to pay monthly monitoring charges. Thus, it is clear from these 38 questionnaire responses that defendant engaged in the same conduct toward each individual class member at the time each class member entered defendant's "contest." Therefore, this court finds that common issues predominate among the members of the proposed class, thereby satisfying the requirement of commonality.

### 3. *Typicality*

Plaintiffs must also demonstrate that their "claims or defenses . . . are typical of the claims or defenses of the class." Pa.R.C.P. 1702(3). This factor requires that "the class representative's overall position on the common

---

6. Plaintiffs' counsel conducted a mail survey titled "class action questionnaire." The questionnaire contains eight questions. Each questionnaire is signed by the respondent. The 38 separate responses to the questionnaire were moved into evidence upon plaintiffs' motion. (N.T. 6/8/99, p. 5.)

issues is sufficiently aligned with that of the absent class members to ensure that her pursuit of her own interests will advance those of the proposed class members." *D'Amelio*, 347 Pa. Super. at 458, 500 A.2d at 1146; *Janicik*, 305 Pa. Super. at 134, 451 A.2d at 457; *Ablin*, 291 Pa. Super. at 47, 435 A.2d at 212. See also, 1 Newberg on class actions § 1115a.

The typicality requirement is satisfied in this case. Plaintiffs offer two individuals as class representatives: James Gaither and Patricia Jackowski. These individuals' positions on the common issues of non-disclosure and misrepresentation at the time of contest entry are aligned with that of the other proposed class members. Both Mr. Gaither and Ms. Jackowski, like the 37 of 38 respondents to question 3 of the questionnaire, did not know at the time they entered the "contest" that installation of the security system required payment of a monthly monitoring charge. (See Gaither deposition at pp. 20-21; Jackowski deposition at pp. 41, 57.) Thus, Mr. Gaither and Ms. Jackowski's positions are aligned with that of the absent class members.

The fact that Mr. Gaither and Ms. Jackowski's positions are aligned with the absent class members is further demonstrated by the testimony of two proposed class members who testified at the certification hearing. These two proposed class members, Mr. Gary Taylor and Ms. Tina Myles, both testified at the certification hearing that, like Mr. Gaither, Ms. Jackowski, and the absent class members who responded "no" to question 3 of the questionnaire, they too were entirely unaware at the time they entered into defendant's "contest" of their obligation to pay a monthly monitoring fee. (N.T. 11/28/00, pp. 13,

15.) Thus, this court finds that Mr. Gaither and Ms. Jackowski's overall positions on the common issue of defendant's purported tendency to deceive are sufficiently aligned with that of the absent class members to ensure that their pursuit of their own interests will advance those of the proposed class members. Accordingly, the requirement of typicality is satisfied in this case.

### 4. *Adequacy of Representation*

Next, for the classes to be certified, this court must also conclude that the plaintiffs "will fairly and adequately assert and protect the interests of the class." Pa.R.C.P. 1702(4). Adequate representation is evaluated under considerations set forth in Pa.R.C.P. 1709, which provides:

"Rule 1709: Criteria for certification. Determination of fair and adequate representation

"In determining whether the representative parties will fairly and adequately represent the interests of the class, the court shall consider among other matters

"whether the attorney for the representative parties will adequately represent the interests of the class;

"whether the representative parties have a conflict of interest in the maintenance of the class action and

"whether the representative parties have or can acquire adequate financial resources to assure that the interests of the class will not be harmed."

As to the first consideration, generally, "until the contrary is demonstrated, courts will assume that members of the bar are skilled in their profession." *Janicik,* 305

Pa. Super. at 136, 451 A.2d at 458; citing *Dolgow v. Anderson,* 43 F.R.D. 472, 496 (E.D.N.Y. 1968). This court finds that plaintiffs have retained counsel highly experienced in class action litigation to prosecute their claims and those of the class. Therefore, this court is satisfied that the attorney for the representative parties will adequately represent the interests of the class.

Second, there is nothing to suggest that the representative plaintiffs have any interest antagonistic to the vigorous pursuit of the class claims against the defendant. Plaintiffs share with the class the interest in establishing that the defendant's marketing tactics violate the law. Third, as to the adequacy of plaintiffs' ability to fund the litigation, counsel's representation that it will advance the necessary costs is all that is required. *Janicik,* 305 Pa. Super. at 137-38, 451 A.2d at 459-60. Further, "[a] lack of funding by a representative plaintiff, without more, is not sufficient to warrant denial of class certification." *Janicik,* 305 Pa. Super. at 138-39, 451 A.2d at 460. This court is satisfied that plaintiffs' counsel here has sufficiently adequate financial resources to fund this litigation. Accordingly, the representative plaintiffs adequately represent the interests of the class.

### 5. *Fair and Efficient Method for Adjudication*

Finally, allowing plaintiff to proceed with adjudication of this suit as a class action would be both fair and efficient. The factors to be evaluated are set forth in Pa.R.P.C. 1708 as follows:

"Rule 1708. Criteria for certification. Determination of class action as fair and efficient method of adjudication

"In determining whether a class action is a fair and efficient method of adjudicating the controversy, the court shall consider among other matters the criteria set forth [below].

"Where monetary recovery alone is sought, the court shall consider

"whether common questions of law or fact predominate over any questions affecting only individual members;

"the size of the class and the difficulties likely to be encountered in the management of the action as a class action;

"whether the prosecution of separate actions by or against individual members of the class would create a risk of

"inconsistent or varying adjudications with respect to individual members of the class which would confront the party opposing the class with incompatible standards of conduct;

"adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;

"the extent and nature of any litigation already commenced by or against members of the class involving any of the same issues;

"whether the particular forum is appropriate for the litigation of the claims of the entire class;

"whether in view of the complexities of the issues or the expenses of litigation the separate claims of individual

class members are insufficient in amount to support separate actions [and];

"whether it is likely that the amount which may be recovered by individual class members will be so small in relation to the expense and effort of administering the action as not to justify a class action."

In determining fairness and efficiency, the court must balance the interests of the litigants, both present and absent, and of the court system. *Janicik,* 305 Pa. Super. at 141, 451 A.2d at 461. Courts should strike this balance mindful that the class action is inherently a "procedural device designed to promote efficiency and fairness in handling large numbers of similar claims." *Janicik,* 305 Pa. Super. at 141, 451 A.2d at 461, citing *Lilian v. Commonwealth,* 467 Pa. 15, 21, 354 A.2d 250, 253 (1976).

Consumer class actions such as the case at bar easily satisfy the fair and efficient method of adjudication requirement of Rule 1708. Defendant has allegedly violated the rights of a large number of geographically dispersed persons to such an extent that the cost of pursuing individual litigation to seek recovery against a well-financed adversary is not feasible. Thus, the alternatives to a class action are either no recourse for potentially hundreds of injured consumers, or even in the unlikely event that they all become aware of their rights and could locate counsel, a multiplicity of scattered suits resulting in the inefficient administration of litigation. Accordingly, a class action is a fair and efficient method for adjudication of this matter.

## CONCLUSIONS OF LAW

(1) The class is sufficiently numerous that joinder of all its members, were the class to be certified, would be impracticable.

(2) There are questions of law and fact common to the class.

(3) The claims or defenses of the representative parties are typical of the claims belonging to absent class members.

(4) The representative parties will fairly and adequately assert and protect the interests of the class.

(5) The attorney for the representative parties will adequately represent the interests of the class.

(6) There is no conflict of interest between the representative parties and the class members which would impede the maintenance of a class action.

(7) The representative parties have or can acquire adequate financial resources to assure the class interests will not be harmed.

(8) The class action will provide a fair and efficient method for adjudicating this controversy.

(9) Common questions of law or fact predominate over any question affecting only individual members.

(10) There are no difficulties in case management which would preclude litigating this matter as a class action.

(11) Prosecution of separate actions by class members would create a risk of inconsistent and varying adjudications and might confront defendant with incompatible standards of conduct.

(12) Individual adjudications would, as a practical matter, dispose of the interests of other class members not parties to the adjudication, or would substantially impair their ability to protect such interests.

(13) This particular forum is appropriate for the litigation of the entire class' claim.

(14) The complexities of the issues, the expenses of litigation, and the small amount of each individual class member's claim make it impossible to support or justify the presentation of separate claims.

For the foregoing reasons, this court has determined that the instant case is appropriate for disposition as a class action, and enters the following order:

## ORDER CERTIFYING A CLASS ACTION

And now, June 29, 2001, in consideration of plaintiffs' motion for class certification and all submissions related thereto, it is hereby ordered that the above-captioned action is certified as a class action. The class shall consist of:

"Class I: (a) All persons who, within the Commonwealth of Pennsylvania, on or after August 30, 1994, entered into a contest sponsored by defendant to win, or were offered a 'free' residential alarm system, upon forms supplied by defendant which were the same or similar to those attached under exhibit 'A' to the seventh amended complaint, and (b) who executed or did execute a sales and monitoring agreement [with defendant], and (c) have become indebted to or paid money to defendant as a result of the foregoing; and,

"Class II: (a) All persons included in Class I who were sued by defendant in Allegheny County based upon an

alleged failure to pay for monitoring services, and (b) against whom defendant obtained judgment in Allegheny County based upon the failure of the person sued to appear and defend."

Every member of the above-defined class will be included unless such member files a written election to be excluded from the class within 30 days from the date of the class notification.

The parties shall submit proposals for a notification procedure and proposed forms of notice for class members within 30 days from the date of this order.

Plaintiffs James Gaither and Patricia A. Jackowski shall serve as class representatives.